## Case No. 10,393.
### OAKLEY v. BALLARD et al.
### BALLARD v. OAKLEY et al.
[Hempst. 475.] [1]

Circuit Court, D. Arkansas. Oct., 1846.

VENDOR AND PURCHASER — ENFORCEMENT OF UNCERTAIN CONTRACTS—RESCISSION.

1. A vendee cannot occupy the attitude of an innocent purchaser without notice, where the vendor was not vested with the legal title.

2. Courts of chancery will not make contracts for parties, nor enforce contracts when uncertain.

3. Where in a contract it was stipulated that a previous agreement relative to the same subject-matter should be rescinded, and this second contract was afterwards rescinded; *held*, that this did not revive the first agreement, and that the rescission of one contract cannot revive another without express words, or a necessary implication to that effect.

[These were cross bills by James Oakley against Thomas B. Ballard and James W. Finley, administrator of Allen M. Oakley, deceased, and Thomas B. Ballard against James Oakley and James W. Finley.]

F. W. Trapnall, John W. Cocke, and Daniel Ringo, for complainant.
Absalom Fowler, for defendants.

OPINION OF THE COURT. From a review of the allegations and proofs in this case, the following appear to be the material facts: Thomas B. Ballard, the defendant in the original and complainant in the cross bill, being entitled to a donation from the United States of three hundred and twenty acres of land, sold the same on the 10th day of July, 1828, to Allen M. Oakley, for $100, the receipt

of which was acknowledged on the writing between them. On the 21st May, 1830, an agreement, under hand and seal, was entered into between Thomas B. Ballard, Allen M. Oakley, James Lemmons, and John H. Fowler, reciting that the said Ballard, by virtue of the act of congress of the 24th May, 1828, had been allowed a donation claim of two quarter sections of land, and had selected them adjoining the town of Little Rock, and had made and erected certain improvements thereon, and then occupied the house and premises so situated; and that for divers good and lawful considerations, the said Lemmons, Oakley, and Fowler had furnished the said Ballard with certain work and labor, care and diligence, and certain sums of money, to enable the said Ballard to carry on his clearing and improvements, and to enable him to go to Batesville to establish his claim to the said two quarter sections of land. Lemmons, Oakley, and Fowler further agreed to aid and assist Ballard, and to furnish such other and further necessaries towards his said settlement as should make his house fit for occupation; and he, on his part, agreed with them that he would do and perform all such acts and things as might be necessary to establish his claim to the above-named lands; and he also thereby granted, bargained, and sold to them four fifths of the land to be acquired by virtue of his settlement right. It was further stipulated that as soon as the title should be acquired, the land should be divided into five equal parts, and Lemmons was to have two parts, and Ballard, Oakley, and Fowler one part each. Shortly after this contract was made, the parties, finding that the land officers at Batesville refused to allow Ballard's claim to be located on the two quarter sections of land on which he had settled and made an improvement, abandoned the contract and surrendered the writings into the hands of Ballard.

It is proven by the testimony of two witnesses, that at the time the second contract was entered into, Allen M. Oakley expressly agreed that his first contract with Ballard for the purchase of his claim was rescinded, and he promised to destroy the papers, which were not then present. Ballard's claim has been located on two quarter sections of the public lands on the Mississippi river, and patents therefor have issued to him; but whether the entry was made by Ballard or Oakley, does not appear. It seems that Allen M. Oakley did not destroy the writings containing the original contract between himself and Ballard relative to the purchase of Ballard's donation claim; but after the claim had been located, namely, on the 21st January, 1837, sold and conveyed the land thus located to the complainant by a deed of that date. It may be material to remark, that James Oakley stands in the shoes of Allen M. Oakley, of whom he purchased. The legal title to the land never was vested in Allen

---

[1] [Reported by Samuel H. Hempstead, Esq.]

M. Oakley, and of course his vendee cannot occupy the attitude of an innocent purchaser without notice. Boone v. Childs, 10 Pet. [35 U. S.] 177; Wood v. Mann [Case No. 17,951]; Flagg v. Mann [Id. 4,847].

The question then arises, whether the claim of Ballard, or rather the land on which it was located, belongs to Oakley or to Ballard. By the first contract, Ballard sold his claim to Allen M. Oakley; by the second contract between Ballard, Oakley, Lemmons, and Fowler, the first contract was rescinded and annulled. They are inconsistent with each other and cannot stand together, and in fact Oakley agreed to burn or destroy the writings, then absent, containing the only evidence of that contract. The second contract, by the mutual consent of the parties, was also rescinded and annulled. To whom does the claim now belong? The claim originally belonged to Ballard. Oakley purchased it from Ballard, and afterwards rescinded the contract of purchase; and from that time it had no vitality. By a second contract, Oakley takes an interest of one fifth in the claim, and this second contract is also rescinded, and the writings surrendered into the hands of Ballard. If Oakley can now have any interest in Ballard's claim, it must be by virtue of the revival and resuscitation of the first contract; and this indeed is insisted on by the counsel of the complainant. I cannot perceive the principle upon which the rescission of one contract can revive another without express words, or a necessary implication to that effect. In this case it is not pretended that there was any express agreement to revive the first contract, nor do I perceive any thing in the circumstances from which such an intention can be implied. If, then, under both of these contracts, Oakley surrendered his rights, he cannot call on this court to restore them, in the absence of fraud or mistake, which are not alleged in the case, nor pretended to exist. It is the province of a court of chancery to enforce contracts fairly entered into, but not to make contracts for parties where they have made none, nor enforce them when uncertain. Colson v. Thompson, 2 Wheat. [15 U. S.] 336, 4 Pet. Cond. R. 144.

I am therefore of opinion, that the bill of James Oakley, the complainant, should be dismissed, and that the writings evidencing the first contract between Thomas B. Ballard and Allen M. Oakley ought to be cancelled; and that each party pay his own costs. Decreed accordingly.

NOTE. At the same term, on the 31st October, 1846, it was proved orally before the court that the lands in controversy exceeded the value of two thousand dollars (Course v. Stead's Ex'rs, 4 Dall. [4 U. S.] 22. 1 Pet. Cond. R. 217; U. S. v. The Union, 4 Cranch [8 U. S.] 216, 2 Pet. Cond. R. 91); and after tendering an appeal bond, with security, to prosecute the appeal according to law, James Oakley, and James W. Finley, as administrator of Allen M. Oakley, deceased, prayed an appeal to the supreme court of the United States from the final decree rendered in the case, which was granted; but the case was not taken up, and the appeal was abandoned.