[Sac. No. 1510.   In Bank.—October 13, 1908.]

## B. De LA BECKWITH, Administrator, etc., of Byron D. Beckwith, Deceased, Appellant, v. WILLARD M. SHELDON et al., Respondents.

TRUST—AGREEMENT TO DEVELOP WATER-RIGHTS ACQUIRED BY APPROPRIATION—CONFIDENTIAL RELATIONS OF ASSOCIATES.—Where an appropriator of water, while his rights thereto are still in existence, conveys the same in pursuance of an agreement with his grantees that they will act in concert and harmony with him and assist him in carrying on a large water enterprise which he had conceived and brought to their attention, and to that end would cause a corporation to be formed to take over the property, all the parties to the agreement become, in effect, copartners in the enterprise of inaugurating and carrying out the proposed scheme, and occupy confidential relations each to the other, and the grantees of the water-rights are trustees of their grantor and of the partnership.

ID.—SUBSEQUENT APPROPRIATION BY SOME OF THE ASSOCIATES—PLACE OF DIVERSION.—Where the purpose of the original appropriator in posting his notices was to obtain water from a certain river and to divert it to a point where it would be practicable to carry it from the river into a particular canal, and to use such canal as a part of the proposed scheme to carry water to lands proposed to be irrigated, the exact point at which the diversion was to be made is immaterial, and such grantees, by making a subsequent appropriation of the same water, at a place slightly different from that where the original notices were posted, under the supposition that the rights under the original appropriation had lapsed, cannot absolve themselves from their liability as such trustees.

ID.—ACTION TO ENFORCE TRUST—IDENTITY OF SCHEMES—EVIDENCE.—In an action by the original appropriator against his associates and a corporation subsequently organized by them which was engaged in carrying out substantially the water scheme originally contemplated, to charge them as trustees and for an accounting, evidence is admissible to show that certain properties and leasehold interests acquired and used by the defendants were identical with those proposed to be acquired under the original scheme. Evidence was also admissible in regard to the extent, size, and value of such property, for the purpose of showing the magnitude of the original scheme, and the reasons for the desire of the original appropriator to obtain assistance therein, and also to show notice to the corporation defendant of rights of the plaintiff.

ID.—CORPORATION FORMED TO CARRY OUT SCHEME.—The fact that the corporation organized by the individual defendants to carry out their scheme, differed in name from that intended to be originally formed, is immaterial.

APPEAL from a judgment of the Superior Court of Colusa County. H. M. Albery, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, J. W. Dorsey, R. M. F. Soto, S. C. Denson, and Ernest M. Weyand, for Appellant.

Charles L. Donohoe, Frank Freeman, F. H. Gould, and Morrison & Cope, for Respondents.

SHAW, J.—The plaintiff appeals from a judgment in favor of the defendants. The appeal was taken within sixty days after the rendition of the judgment and the evidence is presented by a bill of exceptions.

We are of the opinion that certain findings are contrary to the evidence, and that the court below erred in excluding evidence offered by the plaintiff. To get a clear understanding of the matter it will be necessary to state as briefly as possible the facts alleged in the complaint.

Prior to November 30, 1901, the Central Irrigation District, a district organized under the act of March 31, 1897 (Stats. 1897, p. 254), was the owner of a large canal some forty miles in length, extending from a point near the northern side of Glenn County into the county of Colusa. It is not alleged, but it appears from the evidence offered and excluded, that this canal was not connected with the Sacramento River at its upper end, that it was not completed for its entire length and that it had been constructed at an expense of several hundred thousand dollars. The canal was so situated that it could be used in distributing water from the Sacramento River to irrigate many thousand acres of land situated in Glenn and Colusa counties, west of the Sacramento River. We will hereafter refer to it as the "Central Canal." On November 30, 1901, the plaintiff's intestate, Byron D. Beckwith, posted three notices of appropriation of water, each for a flow of 150,000 inches, measured under a four-inch pressure, of the waters of the Sacramento River, and had the same duly recorded, each stating that it was his purpose to divert the waters of said river at the point where the notice was posted, and distribute the same over a large part of the lands on the west side of the Sacramento River in the counties of Glenn,

Colusa, Solano, and Yolo. It was the purpose and plan of said Beckwith to acquire the said Central Canal, and the other property connected therewith, and use the same in the distribution of the water appropriated, by making a connecting canal extending from the proposed place of diversion to the upper end of the said Central Canal. Within sixty days thereafter he commenced excavation on the proposed canal and thereafter prosecuted the same with diligence. Plaintiff had not sufficient means to carry out this large enterprise, and in order to secure assistance therein, on September 20, 1902, he entered into an agreement with the defendants Willard M. Sheldon and J. D. Schuyler, whereby they were to become interested in the said property and enterprise. This agreement provided that the said parties should within sixty days form a corporation, to be known as the Sacramento Canal Company, with one million dollars capital stock; that Beckwith should thereupon convey to said corporation all water appropriations made or owned by him of the waters of the Sacramento River, and all rights of way and canals in which he had any interest connected with or to be used in connection therewith; that work was to be commenced at once toward obtaining rights of way and selling water-rights, and that Sheldon and Schuyler would furnish funds therefor and for all other necessary purposes in carrying on and operating the proposed corporation; that Beckwith was to receive ten thousand dollars and one third of the capital stock of the corporation as compensation for conveying said property to the corporation, and that each party was to be employed by the said corporation while they remained stockholders therein. At the same time Sheldon and Schuyler advanced to Beckwith four hundred dollars as a part of the money due him under the contract, and Beckwith executed to them a deed, conveying to them all of his water-rights and other property referred to in the contract, in trust, to be by them conveyed to the said corporation as soon as the same was formed. Thereupon, Sheldon and Schuyler took charge of the Beckwith rights and on January 12, 1903, they obtained a lease from the Central Irrigation District to Sheldon for the period of fifty years of all the said Central Canal and the property connected therewith. They did not organize a corporation under the name of the Sacramento Canal Company. On Feb-

ruary 20, 1903, Sheldon, Schuyler, and others incorporated
the Central Canal and Irrigation Company for the purpose
of securing in its name the water-rights and properties of
Beckwith, and in pursuance of said purpose Sheldon and
Schuyler secured, in the name of said corporation, rights of
way and other property for the formation of the irrigation
system, including the rights of way and property of Beckwith
aforesaid.  On February 22, 1903, Sheldon posted two notices
of appropriation of water of the Sacramento River, each for
five thousand cubic feet per second thereof, at substantially
the place where Beckwith had previously posted one of his
notices, and for the appropriation of substantially the same
water previously appropriated by Beckwith.  This was done
fraudulently for the purpose of acquiring an independent
claim or right to the said appropriation and water-rights.
Sheldon and Schuyler thereupon represented that they would
not be able to carry out the original contract according to its
terms, because it was necessary to interest other persons
therein and to give such other persons a larger interest therein
than the original contract contemplated.  In consequence of
these representations Beckwith and the said defendants, on
April 8, 1903, executed another contract.  This contract pro-
vided that the prior contract of September 20th should be
canceled and annulled, that Sheldon and Schuyler should pro-
ceed to organize the corporation to be named the Sacramento
Canal Company, and should cause it to issue bonds not exceed-
ing one million dollars, bearing interest at five per cent, that
all the water-rights, rights of way, and all other things held
by either of the parties thereto, or in their interest, connected
with the said canal scheme, should be by them conveyed or
transferred to said corporation when organized, and that
thereupon Beckwith should receive, for the property which
he should thereby convey to said corporation, the sum of fifty
thousand dollars in said bonds at par, which should be in
full payment and satisfaction of all his rights and demands
upon the corporation, or upon the other parties to the con-
tract, or upon the property so to be conveyed to said corpo-
ration.  It will be noted that at that time Sheldon apparently
still held the lease of the Central Canal and a claim to water
under his notices of appropriation of February 22, 1903.  This
contract was executed by Sheldon and Schuyler without any

intention of performing the same. They wholly and entirely refused to comply with said contract or any part thereof, and did not at any time organize any corporation as provided for therein, but they secured in their own name and in the name of the Central Canal and Irrigation Company, valuable rights of way, easements, and property connected with and necessary to the said proposed enterprise, and made numerous contracts for rights of way and for the distribution of the water to be diverted from the river in the name of the Central Canal and Irrigation Company, and made conveyances or agreements for sale of the water to be diverted by them through the canals of the said Central Canal and Irrigation Company. On October 28, 1903, the Central Canal and Irrigation Company posted, at about the same point as that at which the plaintiff's notices of appropriation were posted, another notice of appropriation of water of the Sacramento River, to be used for the same purposes, claiming five thousand feet thereof per second. The defendants, Sheldon and Schuyler, deny that plaintiff has any right or interest in any water of the Sacramento River, and they have failed and refused to deliver to Beckwith any of the bonds provided for in the contract of April 8th. All the acts which they have done, as alleged, were done with the intent to cheat, wrong, and defraud the plaintiff. The Central Canal and Irrigation Company acquired its water-rights, they being substantially the same as those possessed by the plaintiff, with full knowledge of the plaintiff's rights and interests therein as proposed in the original enterprise or scheme.

The prayer of the complaint is that the property so alleged to be held by the defendants be decreed to be held by them and each of them in trust for the plaintiff, for an accounting of all property and profits received by defendants, that plaintiff recover fifty thousand dollars as damages and for general relief. There are other more specific prayers which need not be mentioned.

The court found that the notices of appropriation posted by Sheldon on February 22, 1903, were not posted at substantially the same point as the notices of location posted by Beckwith on November 30, 1901, and that Sheldon's notices were not made for the purpose of acquiring claims or rights to water independent of those of Beckwith. It also found that

no confidential or fiduciary relation at any time existed between Beckwith on the one hand and Sheldon and Schuyler on the other, and that the appropriation of water attempted to be made by Beckwith in 1901, lapsed and became void within sixty days thereafter, because Beckwith failed to proceed with due or proper diligence in constructing the work for the diversion of the water claimed therein.

There was evidence tending to show that Beckwith's work in pursuance of his notices of 1901 was not of sufficient magnitude and was not prosecuted with sufficient diligence to comply with the requirements of the statute. Hence, if Sheldon and Schuyler, or the Central Canal and Irrigation Company, did not stand in confidential relations to Beckwith, with respect to these appropriations, and were in a position to act entirely independent of him, it may be that they could have made other locations in substantially the same place and for the same purpose without being answerable therefor to Beckwith. But the finding that there were no confidential relations existing between Beckwith, Schuyler, and Sheldon was directly contrary to the evidence. Beckwith had posted his notices of appropriation claiming water and was proceeding with some degree of diligence to do the work required by the statute. The evidence clearly shows that he began the work before the sixty days had elapsed. By entering into the contract with him, Schuyler and Sheldon recognized that he had some rights in the matter, and they agreed to act in concert and harmony with him and to assist him in carrying on the large enterprise which he had conceived and brought to their attention. He had conveyed to them all rights which he possessed under his notices. It does not appear that any other person then claimed the right to divert the same water. So long as third persons did not intervene, there can be no doubt that Sheldon, Schuyler, and Beckwith could go on under the Beckwith notices and, by proper steps, could perfect their rights so as to make them legal and valid against all third persons, except, of course, those having prior and superior rights in the waters of the river. Schuyler and Sheldon had received this conveyance and had agreed to hold the said rights and convey the same to the contemplated corporation when it was formed. Subsequently Sheldon obtained a lease of the Central Canal, a canal some forty miles in length, and

that lease must have had considerable value. He also posted notices of appropriation, practically at the same point as that at which the notices of Beckwith were posted, and whatever rights he may have had under that notice were also of some value. Both of these rights he agreed by the contract of April 8th to convey to the proposed corporation, "The Sacramento Canal Company." Under these circumstances there can be no question but that the three parties were, in substance and effect, at least until conveyances were made as provided in the contract of April 8th, copartners in the enterprise of inaugurating and carrying out the proposed scheme for the diversion and distribution of the water of the Sacramento River for irrigation over the large territory available therefor, and that Sheldon and Schuyler were also trustees of Beckwith and the partnership, holding as such the water-rights conveyed to them by Beckwith. (*Stewart* v. *Douglass,* 148 Cal. 514, [83 Pac. 699].) Confidential relations therefore did exist between them.

The finding that the location of the notices posted by Sheldon and by the Central Canal and Irrigation Company was not substantially in the same place as those posted by Beckwith is also contrary to the stipulation which should have been admitted. It showed that one, at least, of the Beckwith notices was posted within less than two hundred feet of the place where one of the notices of Sheldon and the notice of the company were posted, both being posted in the same place. Plaintiff also offered to prove that the company excavated a large canal beginning at the point where its notice was posted and extending to the upper end of the Central Canal, and also completed the latter canal by connecting the disconnected parts thereof, and began the distribution of water upon a large scale, and this evidence should have been admitted. The purpose of Beckwith in posting his notices was to obtain water of the Sacramento River and to divert it at a point where it would be practicable to carry it from the river into the said canal of the Central Irrigation District, and to use the said canal as a part of the proposed irrigation system to carry water to the lands proposed to be irrigated. The exact point at which the diversion was to be made was not important. The main object of the scheme was to obtain a large quantity of water of the river, carry the same into the said Central

Canal, which was only a few miles away, and distribute the same to a certain territory. It is perfectly clear from the evidence that the appropriation intended to be made by the defendants was for precisely the same purpose, and was made at a point fully as convenient, but no more so, for conducting the water into the former canal as that of Beckwith. It is also plain that the water which they intended to appropriate was the same water as that which Beckwith intended to appropriate, and that their appropriations were made upon the supposition that his rights had lapsed and that they were at liberty to entirely disregard his rights and obtain the same water indirectly by means of another appropriation. Under these circumstances, in view of the relations between the parties, the slight difference between the proposed places of diversion is not important or material and it would not be true that the diversion was not made at substantially the same place as that intended by Beckwith.

Evidence was offered by the plaintiff to the effect that, at the time of the execution of the lease from the Central Irrigation District to Sheldon, the district owned a strip of land extending from the upper end of the Central Canal to the river and covering the site of the Beckwith water locations, as well as that of the later locations of Sheldon and the canal company, and that said land was, consequently, included in the lease. The exclusion of this evidence was error. The property leased, aside from the canal itself, was described in general terms as "all real property owned by" the district in connection with its canal. It was proper, therefore, to show by proof that the general description contained in the lease included this particular property and that this property included the sites of the several water locations. The theory of the plaintiff was that Sheldon had obtained this lease for the benefit of the three parties to the contract of September 20, 1902, and held it in trust for use in the common enterprise in which they were engaged. It was important, therefore, to show what property the lease included and its location with respect to the general design. The evidence offered would also tend to prove that the new water locations were made in aid of the common plan and not in antagonism thereto. For like reasons the court should have admitted the proof of the declarations of Sheldon, at the time he was negotiating for

the lease, including his bid therefor, to the effect that he could and would acquire the Beckwith water-rights for use in connection with the Central Canal, and that those rights were necessary to the scheme he proposed to carry out, because they were superior to the right of the irrigation district, and that he intended to post new notices of appropriation in order to protect those rights.

Evidence should have been admitted in regard to the extent and size of the Central Canal and its value. Such facts would show the magnitude of the enterprise and the reasons for the desire of Beckwith to obtain assistance therein. While not very important, this would throw some light on the purposes, motives, and intentions of the parties. The evidence tending to show notice to the Central Canal and Irrigation Company of the right of Beckwith and of his interest in common with Sheldon, and the evidence to show the time that had elapsed since the Central Irrigation District had done any work in the prosecution of its irrigation scheme, or toward the completion of the Central Canal, should also have been admitted.

The proof of payment by the Central Canal and Irrigation Company of the rent called for by the lease to Sheldon should have been allowed. It tended to show, what seems to have been disputed, that that company took over the lease soon after its organization, that this was the purpose of Sheldon when that company was organized, and that it was really the corporation contemplated by the original contract, although it was given a different name. The difference of the name would be of no importance if it were in fact intended to serve the same purpose. The court should also have allowed plaintiff to prove that the line of the proposed canal described in Beckwith's appropriation notices was identical with the line of the Central Canal.

Certain other persons, parties defendant, filed general demurrers to the complaint, which the court sustained, and thereupon rendered judgment in their favor. The complaint alleges that each of them claims some right, estate, and interest in the property which the plaintiff claims is held in trust for his benefit, but that said claims were without right. They were therefore proper parties defendant in the action, in order that their interests may be bound by the judgment. The demurrers should have been overruled. There was no

CLIV Cal.—26

demurrer for uncertainty or ambiguity. It is probable that the failure of the court below to perceive the relevancy of the evidence excluded was due to the vagueness, ambiguity, and lack of coherence in the complaint. It should be amended and the facts stated more directly and clearly and in more orderly fashion.

We do not think it necessary to discuss the other alleged errors.

The judgment is reversed.

Sloss, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.