[Sac. No. 1980.   Department Two.—April 16, 1913.]

B. DE LA BECKWITH, as Administrator of the Estate of Byron D. Beckwith, Deceased, Appellant, v. WILLARD M. SHELDON et al., Respondents.

NOVATION—SUBSTITUTION OF CONTRACT FOR PRIOR EXECUTORY CONTRACT —BREACH OF NEW OBLIGATION—FORMER CONTRACT NOT REVIVED.— Where a subsequent contract is entered into without fraud and with an agreement of minds that it was to be in substitution of a former, and by the express terms of the latter the former is declared to be rescinded, canceled and annulled, a novation is effected, and the former agreement is extinguished and is not revived upon a mere failure to perform the new obligation. This result follows although the new agreement is itself executory.

ID.—RIGHTS OF PARTIES LIMITED TO NEW CONTRACT.—After such novation, the rights of the parties are to be governed by the new contract alone, and a failure to perform it does not, under any theory of rescission or revivor, operate to restore the extinguished obligation.

ID.—RESCISSION—INTERVENING RIGHTS OF THIRD PARTIES.—Where the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining party left to his other remedies.

ID.—CONDITION OF RESCISSION—PLACING OTHER PARTY IN STATU QUO.— Upon rescission, the other party must be restored to the condition he was in when the contract was made, or, in other words, as a condition of rescission the rescinding party must first place the other in *statu quo*.

ID.—JUDGMENT—DECREEING BONDS TO PLAINTIFF.—The judgment of
the trial court, decreeing to the plaintiff certain bonds, in accord-
ance with the terms of such substituted contract, with accrued inter-
est thereon, in view of the circumstances of this case, and the
intervening rights of third parties, is held to give him everything
to which he was entitled for the breach of such contract.

APPEAL from a judgment of the Superior Court of Yolo
County. M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

A. L. Shinn, J. W. Dorsey, R. M. F. Soto, E. M. Weyand,
S. C. Denson, and A. C. Huston, for Appellant.

Frank H. Gould, Frank H. Short, C. W. Thomas, Frank
Freeman, and C. L. Donohue, for Respondents.

HENSHAW, J.—This is an appeal upon the judgment-
roll, appellant insisting that under the findings made by the
court he is entitled to other and greater relief than that which
the court awarded him. This is a second appeal. The first
will be found reported in *Beckwith* v. *Sheldon et al.*, 154 Cal.
393, [97 Pac. 867]. The decision upon the former appeal
was in favor of the defendants, and it was reversed princi-
pally for the reason that certain material findings of fact
were held to be contrary to and unsupported by the evi-
dence, and herein especially the finding of fact that confiden-
tial relations did not exist between Beckwith, Sheldon, and
Schuyler. In this, his fourth amended complaint, which is
very voluminous, plaintiff sets up all his intestate's dealings,
transactions and contracts with Sheldon and Schuyler and
the corporations, named as parties defendant, charging as
to the latter that one and all they took with notice of plain-
tiff's rights and equities. We need not at this time detail all
the allegations of the complaint. Such of them as are neces-
sary for this consideration will be set forth in their proper
places. It is sufficient now to state that the complaint in
effect charges that every one of these transactions and con-
tracts was fraudulently conceived by Sheldon and Schuyler
and fraudulently entered into for the purpose of defrauding
Beckwith of his rights. What those rights are, as plaintiff

and appellant conceives them to be, is evidenced by the prayer of the complaint, which asks that it be adjudged not only "that all property and rights conveyed by deed from plaintiff to Willard M. Sheldon and J. D. Schuyler" be decreed to be held in trust by the present owners for the benefit of Beckwith, but that "all other property, rights and contracts acquired by defendants or any of them in pursuance of the promotion of said irrigation system and enterprises and all profits thereof" be held under the same trust. And, further, that "plaintiff be substituted to the rights, property and contracts of the Central Canal & Irrigation Company" (the main corporation), and, as well, to all the "rights, properties and contracts of the defendant Sacramento Valley Irrigation Company, Sacramento Valley West Side Irrigation Company, and the American Water Works & Guarantee Company." Finally, and in addition to all this, that plaintiff recover fifty thousand dollars as compensatory damages and five thousand dollars in addition as punitive damages. There is the usual prayer for "other and further relief."

In 1901 Byron D. Beckwith, whose personal representative is the plaintiff here, conceived the project of making large diversions of water from the Sacramento River for irrigating purposes. He needed financial assistance and entered into an agreement with Sheldon and Schuyler, under which he conveyed to them all the property rights that he had acquired in connection with his scheme, and was to receive from them ten thousand dollars and one-third of the capital stock of a corporation to be formed, with a capital stock of a million dollars. This capital stock he, in turn, agreed to sell to Schuyler and Sheldon, or their assigns, for seventy-five thousand dollars cash, or for that amount of the bonds of the corporation to be formed, the bond issue not to exceed a million dollars, and the price to be the market price of the bonds at the time of the sale and purchase of his stock. This contract was entered into on the twentieth day of September, 1902. Thereafter a later agreement was entered into, on April 8, 1903. This agreement declared in terms that the agreement of September 20, 1902, was "rescinded, canceled and annulled," in consideration of which rescission, cancelation and annulment "and of other good and sufficient considerations, including a conveyance by said party of the first

part (Beckwith) to the parties of the second part (Sheldon and Schuyler) or to the said corporation hereinafter agreed to be organized, the parties of the second part hereby agree and promise that they will, with all convenient dispatch, proceed to the organization of a corporation under the laws of California to be named 'Sacramento Canal Company' with a capitalization of one million dollars." It was then provided that to this corporation should be conveyed all the water-rights, rights of way "and all other things held by the party of the first part and parties of the second part or in their interest, connected with the said canal scheme"; and, finally, that the parties of the second part undertook that Beckwith should receive bonds of the corporation in the sum of fifty thousand dollars, the total bond issue of the corporation not to exceed one million dollars, and the bonds to bear a rate of interest of five or six per cent, "which shall be in full extinguishment and payment of all rights and demands of the party of the first part upon the said corporation, or upon the parties of the second part, or upon the property or rights so to be conveyed to the said corporation." Through no fault of defendants, the Sacramento Canal Company was not organized as a corporation. There was in existence a corporation known as Central Canal and Irrigation Company which the court finds was "with the exception of its name, identical with the corporation provided for" in the contract. This corporation was accepted as a substitute for the Sacramento Canal Company, and to it were conveyed all of the rights and properties contemplated to be conveyed to the Sacramento Canal Company. The Central Canal and Irrigation Company refused to deliver to Beckwith, after demand, the fifty thousand dollars worth of bonds contemplated by the contract. The refusal was based upon the following facts, as stated in the answer: That Beckwith had represented to his associates that he had means whereby he could secure all the necessary rights of way for the construction of the canal without cost, and that Beckwith did not have such means and did not so secure these rights of way. The court finds, in accordance with this allegation, "that the said rights of way were afterward purchased by said defendant Central Canal and Irrigation Company at a very large cost," but finds further "that Sheldon and Schuyler were not misled by said misrepresenta-

tions.'' This finding, then, is a declaration that Beckwith did misrepresent to his associates what he could and would do, but that no charge of fraud could be predicated thereon and no assertion of a failure of consideration, by reason of the fact that the associates were not misled, and that there were other considerations sufficient to support the agreement. It should be added that every allegation of fraud and every intimation of fraud charged and imputed in the complaint against the defendants is negatived and repudiated by the findings.

The court's conclusions of law and judgment decreed to plaintiff the bonds of the Central Canal and Irrigation Company in accordance with the terms of the contract hereinabove set forth, with accrued interest thereon. This judgment plaintiff rejects, insisting that he is suing to have declared and enforced a trust as evidenced by his pleading and the prayer of his complaint, and that the court has given him, in effect, a lien for a monetary judgment, which he has not asked, and which is without the issues of the action. He bases his contention upon the argument that, by the failure of the defendants to comply with the contract of April, 1903, the option was open to his intestate to rescind it and he did rescind it; that this rescission revived the previous contract of September, 1902, by which he was entitled to one-third of the stock of the corporation, and that he is therefore suing to enforce his rights under the latter agreement.

But there are two completely satisfactory answers to appellant's contention. The first of these is that by the substitution of the contract of April, 1903, for the contract of September, 1902, the latter determining all rights and covering the whole subject matter of the former, a novation resulted, and that through this novation, by the very terms of the 1903 contract declaring the agreement of 1902 to be rescinded, canceled and annulled, as well as by operation of law (Civ. Code, sec. 1531, subd. 1), the earlier agreement was extinguished. And this extinguishment does not mean that the earlier contract was held in abeyance or in suspense. It does not mean that it could be revived upon a mere failure to perform the new obligation. It means that it was canceled and obliterated as completely as though it had never had existence. It means that, saving in the exceptional cases

which are indicated by section 1533 of the code, and of which this is not one, all rights are to be measured and determined under the new substituted obligation as completely as though it had never been preceded by an earlier contract. It matters not, as has been said, that the new agreement is itself executory. Indeed, generally speaking, all the cases arise when the substituted agreement is executory, for, if executed, there could seldom or never be cause of complaint or ground of action. The courts have felt themselves compelled to look no further than to determine whether a novation has taken place, or, in other words, whether the new contract was entered into without fraud and with an agreement of minds that it was to be substituted for the existing obligation. When that point has been reached they have found no difficulty in declaring that the rights of parties to the agreement are to be governed by the new contract alone, and that a failure to perform does not, under any theory of rescission or revivor, operate to breathe new life into the dead and extinguished obligation. (*Spier* v. *Hyde*, 78 App. Div. 151, [79 N. Y. Supp. 702]; *Morehouse* v. *Second Nat. Bank*, 98 N. Y. 503; *Kromer* v. *Heim*, 75 N. Y. 576, [31 Am. Rep. 491]; *Dean* v. *Skiff*, 128 Mass. 174; *Huggins* v. *Safford*, 67 Mo. App. 469; *Howard* v. *Scott*, 98 Mo. App. 509, [72 S. W. 709]; *Oakley* v. *Ballard*, 1 Hempst. 475, 18 Fed. Cas. 515.)

The second and equally satisfying reason is that this action presents facts and features which would make it to the last degree inequitable to decree a rescission and a revivor of the 1902 contract. It is, of course, fundamental that where the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining party left to his other remedies. (*Meyers* v. *Merillion*, 118 Cal. 352, [50 Pac. 662].) Equally is it fundamental that upon rescission the other party must be restored to the condition he was in when the contract was made, or, in other words, as a condition of rescission the rescinding party must first place the other in *statu quo*. (2 Warville on Vendors, 2d ed., p. 1028; *Cleary* v. *Folger*, 84 Cal. 316, [18 Am. St. Rep. 187, 24 Pac. 280]; *Drew* v. *Pedlar*, 87 Cal. 443, [22 Am. St. Rep. 257, 25 Pac. 749]; *Phelps* v. *Brown*, 95 Cal. 572, [30 Pac. 774]; *Fountain* v. *Semi-Tropical*

*L. & W. Co.,* 99 Cal. 683, [34 Pac. 497]; Chitty on Con-- tracts, p. 722; 9 Cyc. 437; 3 Am. & Eng. Ency. of Law, p. 931; *Snow* v. *Alley,* 144 Mass. 546, [59 Am. Rep. 119, 11 N. E. 764].) When consideration is paid to the nature of the rights which Beckwith conveyed to his associates and which were by them conveyed to the Central Canal and Irrigation Company; that these rights were principally rights arising under notices of appropriation of waters; that to perfect these rights a vast amount of labor was required as well as the acquisition of other rights of way, canals and ditches; that Beckwith himself having insufficient means was not prosecuting the work up to the measure required by the law for the perfection of his rights under his notices of location; that the corporation expended large sums of money to perfect these rights and to secure other properties necessary for the development of its irrigating system; that the rights of innocent stockholders and bondholders have intervened; that all the transactions between these parties are found to have been without fraud, and that the single legal result is that the corporation did not give its bonds to Beckwith under the belief declared by the court's findings to have been mistakenly held,—namely, that Beckwith had parted with no, or an inadequate, consideration for them; and, finally, that under the agreement of 1903 Beckwith had fairly and advisedly put a full value upon everything with which he parted, it requires, we think, no comment upon this recital to show that when the court gave him that, it gave him everything to which he was entitled.

For these reasons the judgment appealed from is affirmed.

Lorigan, J., and Melvin, J., concurred.