[Sac. No. 2063.    In Bank.—December 10, 1914.]

B. DE LA BECKWITH, Administrator of the Estate of Byron D. Beckwith, Deceased, Respondent, **v.** WILLARD M. SHELDON et al., Appellants.

CONTRACT—COMPROMISE CONCERNING WATER-RIGHTS—NATURE OF AGREE-MENT—MONEY OBLIGATION.—A compromise agreement made by one who owned certain water-rights with persons to whom he has trans-ferred such rights in trust to be by them transferred to a corporation to be formed to carry on an irrigation enterprise, which agreement provides that the parties of the second part "will cause such pro-ceedings to be had as that there shall be paid to party of the first part in consideration of the rights which he has theretofore conveyed to parties of the second part, and which he will convey to said cor-poration the sum of fifty thousand dollars in" bonds of the "Com-pany, at par," is not a mere agreement to sell or deliver bonds, but a promise to pay money, and the first party, after a default of the promisor, may sue thereon as upon a money obligation and recover without alleging or proving the value of the bonds.

ID.—WORDS OF CONTRACT—INTERPRETATION.—The words "in bonds of the . . . Company, at par," does not change such contract into an agreement solely for the delivery of the bonds, but merely gives the payer the option or privilege of making such payment by delivering the bonds as specified when the time of performance arrives.

ID.—JUDGMENT—LIEN ON PROPERTY—WHEN PROPERLY DECLARED.—It is proper to have the judgment, based on such agreement, declared a lien on the property of the company.

ID.—EQUITY—DECLARING THAT DONE WHICH SHOULD HAVE BEEN DONE —LIEN OR MORTGAGE.—Under the well-established principle of equity that that which ought to have been done will be deemed done, where a party agrees to give a mortgage or lien on property, or imperfectly attempts to execute the mortgage or lien, upon a valuable considera-tion received, a court of equity, upon a proper showing, will create a specific lien on the property intended to be hypothecated, and enforce the same.

APPEAL from an order of the Superior Court of Yolo County refusing a new trial.    M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

Frank Freeman, Frank H. Gould, Frank H. Short, C. W. Thomas, and Vincent Surr, for Appellants.

A. L. Shinn, J. W. Dorsey, R. M. F. Soto, E. M. Weyand, S. C. Denson, and A. C. Huston, for Respondent.

SHAW, J.—This action was begun by the decedent, Byron D. Beckwith, in his lifetime, to enforce certain trusts set forth in the complaint. Upon the first trial the defendants recovered judgment. Upon appeal this judgment was reversed. (See *Beckwith* v. *Sheldon,* 154 Cal. 393, [97 Pac. 867].) Upon the second trial the plaintiff recovered judgment declaring a lien upon the property of the Central Canal and Irrigation Company for fifty thousand dollars and also a personal judgment against the said company for that sum. The plaintiff, believing he was entitled to greater relief, appealed from the judgment, but it was affirmed. (See *Beckwith* v. *Sheldon,* 165 Cal. 319, [131 Pac. 1049].) The present appeal is by the defendants, from an order denying their motion for a new trial.

The opinions above referred to contain elaborate statements of the facts involved in the controversy. It will not be necessary here to state them at great length. The sole proposition now urged for reversal is that the decision is against law because of the failure to find the value of the fifty thousand dollars in bonds that were to be delivered to Beckwith, the theory being that this issue is material and that the judgment for fifty thousand dollars cannot be supported in the absence of a finding that said bonds were worth that sum.

After the reversal of the first judgment, the plaintiff filed a fourth amended complaint. The second judgment was given after a trial upon this complaint. The judgment for the plaintiff was based on a compromise agreement executed on April 8, 1903, between Beckwith, as first party, and Sheldon and Schuyler, as second parties. Sheldon and Schuyler held certain water-rights which had been conveyed to them by Beckwith in trust to be conveyed to a corporation which was to carry on the irrigation enterprise contemplated in the agreement. This agreement first provided that a former agreement should be canceled and annuled. It then proceeded to declare that in consideration of said cancellation and of certain conveyances by Beckwith to Sheldon, or to a corporation, Sheldon and Schuyler would organize a corporation to be named "Sacramento Canal Company," with a capital stock of one million dollars, which company should provide for and authorize a bond issue of one million dollars, secured by a trust deed of all its property. To this corporation,

when organized, all the property held by all the parties for the purposes of the scheme was to be conveyed.  The agreement then closed with the following clause:

"And the parties of the second part further promise and agree that they will cause such proceedings to be had as that there shall be paid to party of the first part in consideration of the rights which he has theretofore conveyed to parties of the second part, and which he will convey to said corporation the sum of fifty thousand dollars in said bonds of the Sacramento Canal Company, at par, which shall be in full extinguishment and payment of all rights and demands of the party of the first part upon the said corporation, or upon the parties of the second part or upon the property or rights so to be conveyed to the said corporation."

Prior to the execution of this agreement Sheldon and Schuyler had formed the defendant corporation, the Central Canal and Irrigation Company.  The parties, including said company, thereupon agreed that it should be substituted for the Sacramento Canal Company, proposed in said agreement as the corporation to carry out the purposes of the agreement of April 8, and that it should assume the obligations and perform the duties therein imposed on the proposed Sacramento Canal Company, and should take and hold the property agreed to be conveyed to said Sacramento Canal Company.  Thereupon the property referred to was conveyed to said defendant, Central Canal and Irrigation Company, and said corporation accepted the same, and, in consideration thereof, undertook to perform the obligations and carry out the purposes of said agreement, including the issuance of bonds to Beckwith. Thereafter said company, in pursuance of the agreement, provided for a bond issue of one million dollars secured by a trust deed of its property, and set apart fifty thousand dollars thereof, at face value, duly signed, for delivery to Beckwith in discharge of the obligation of the agreement, as above set forth, but it refused to deliver them, neither said bonds nor any other bonds were ever delivered or issued to him, and said obligation remains unperformed and unsatisfied.

The defendants' argument is that the portion of the agreement above quoted was, in effect, an agreement by Schuyler and Sheldon to deliver the bonds of the defendant corporation to Beckwith, and that upon the failure to deliver the same the measure of damages would be the value of the bonds at

the time delivery was due, or afterwards, at plaintiff's option. (Civ. Code, secs. 3309, 3336.) If this were the true aspect of the case, it would be conceded that a finding of the value of the property to be sold would be essential to a recovery of damages and such value should be alleged and proved. There is neither allegation nor finding of the value.

Mr. Freeman, in his note to *Roberts* v. *Beatty*, (2 Pen. & W., (Pa.) 63), in 21 Am. Dec. 425, says that there is some diversity of opinion as to how agreements to pay a sum of money in specific articles at a fixed rate shall be construed in case of failure to furnish the articles within the time specified; that "one line of authorities holds that such contracts are agreements for the delivery of specific property," in which case the remedy of the promisee is by action for damages and the value of the articles is material. To this view he cites seven cases. Of these only five are to the point, —namely, *Mattox* v. *Craig*, 2 Bibb. (Ky.) 584; *Cole* v. *Ross*, 48 Ky. 393, [50 Am. Dec. 517]; *McDonald* v. *Hodge*, 5 Hayw. (Tenn.) 85; *Meason* v. *Phillips*, Add. (Pa.) 346, and *Edgar* v. *Boies*, 11 Serg. & R. (Pa.) 445, to which we add *Starr* v. *Light*, 22 Wis. 433, [99 Am. Dec. 55]. Of the other two cases cited, *Justrobe* v. *Price*, Harper, (S. C.), 111, was an agreement to "deliver" rice, not to pay money, and *Wilson* v. *George*, 10 N. H. 445, merely decides that under the technical rules of the common law as to forms of action, a recovery on such contract cannot be had in an action for money had and received. Other New Hampshire cases hold that such recovery may be had in a declaration specially upon the contract. (*Odiorne* v. *Odiorne*, 5 N. H. 315; *Tibbetts* v. *Gerrish*, 25 N. H. 41, [57 Am. Dec. 307].) In Pennsylvania, Tennessee, and South Carolina, later cases state the doctrine that such contracts become payable in money if the payer fails to deliver the articles. (*Roberts* v. *Beatty*, 2 Pen & W. (Pa.) 63, [21 Am. Dec. 425]; *Choice* v. *Mosely*, 1 Bailey Law [S. C.] 136 [19 Am. Dec. 661]; *Bloomfield* v. *Hancock*, 9 Tenn. 101.) Mr. Freeman proceeds to say that the greater weight of authority is in favor of the doctrine that upon the failure of the payer to deliver the articles within the time provided, the contract becomes an obligation to pay the sum of money mentioned and may be sued on as such. He cites to this effect cases from the states of Virginia, Connecticut, Indiana, Illinois, New York, Vermont, Texas, Kansas, and

Massachusetts, Mississippi, Maine, Ohio, Alabama, North Carolina, Oregon, Louisiana, and Nebraska also follow this doctrine. The citations to the cases may be found in Mr. Freeman's note aforesaid, and in volume 11 of the Century Digest. (Tit. Contracts, secs. 1105, 1106.) In California also this doctrine has been adopted. (*Marshall* v. *Ferguson*, 23 Cal. 69; *Cummings* v. *Dudley*, 60 Cal. 385, [44 Am. Rep. 58].)

Looking to the terms of the agreement, it is easily seen that it is not a mere agreement for the delivery of the bonds. The promise is "that there shall be paid to" Beckwith "the sum of fifty thousand dollars." This is not an agreement to sell or deliver bonds, but a promise to pay money. The addition of the words: "in bonds of the . . . Company, at par," does not change it into an agreement solely for the delivery of the bonds, but merely gives the payer the option or privilege of making such payment by delivering the bonds as specified when the time of performance arrived. The defendant, Central Canal and Irrigation Company, having received the consideration furnished to the enterprise by Beckwith, and having undertaken to perform the obligation to him set forth in the agreement, was bound thereby to the same extent as if it had been a party thereto. When it thereupon refused to perform the obligation, the promise became an absolute money obligation and the value of the bonds was immaterial, or at all events the payment in money became immediately due (*Brown* v. *Foster*, 51 Pa. St. 173), and the payee could sue thereon as upon a money obligation and recover without alleging or proving the value of the bonds. Much more is its character as a money obligation apparent when the nature of the thing to be substituted for money in payment is considered. The company was to deliver its own bonds for fifty thousand dollars, its promises to pay that sum, in satisfaction of the amount which Beckwith was to receive in the settlement. Its debt would remain the same; the only advantage to it would be that the time of payment would be postponed. For these reasons we are of the opinion that the omission of a finding of the value of the bonds is immaterial.

With regard to that part of the judgment which declares a lien on the property of the company, we need only say that, under the well established principle of equity that that which ought to have been done will be deemed to have been done, it

is held that where a party agrees to give a mortgage or lien on property, or imperfectly attempts to execute such mortgage or lien, upon a valuable consideration received, a court of equity, upon a proper showing, will create a specific lien on the property intended to be hypothecated, and enforce the same. (*Daggett* v. *Rankin,* 31 Cal. 327; *Racoullat* v. *Sansevain,* 32 Cal. 389; *Love* v. *Sierra etc. Co.,* 32 Cal. 653, [91 Am. Dec. 602]; *Remington* v. *Higgins,* 54 Cal. 623; *Peers* v. *McLaughlin,* 88 Cal. 297, [22 Am. St. Rep. 306, 26 Pac. 119]; *Higgins* v. *Manson,* 126 Cal. 470, [77 Am. St. Rep. 192, 58 Pac. 907]; *Hall* v. *Cayot,* 141 Cal. 18, [74 Pac. 299]; *Kreling* v. *Kreling,* 118 Cal. 413, [50 Pac. 546].)

We are therefore of the opinion that the motion for a new trial was properly overruled.

The order denying a new trial is affirmed.

Sloss, J., Henshaw, J., Melvin, J., Lorigan, J., and Angellotti, J., concurred.