Howard E. SAARI, Plaintiff–Appellee,

v.

SMITH BARNEY, HARRIS UPHAM & CO., INC., Defendant–Appellant.

No. 90–55187.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1992.

Decided June 29, 1992.

Robert D. Feighner, Keesal, Young & Logan, Long Beach, Cal., for defendant-appellant.

Michael L. Goldberg, Mandell, Lewis, & Goldberg, McLean, Va., for plaintiff-appellee.

Before: BRUNETTI, O'SCANNLAIN, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

In the employer's appeal of a district court order refusing to order arbitration of a discharged employee's claims, we hold that the Federal Employee Polygraph Protection Act does not prohibit arbitration of claims where required by contract. We further hold that the state law claims for violation of the California Labor Code and slander are likewise subject to arbitration.

*FACTS AND PROCEEDINGS BELOW*

Howard Saari (Saari) was employed by Smith Barney, Harris Upham & Co., Inc. (Smith Barney) as an account executive beginning in July, 1988, and alleges that at all times his work was satisfactory. According to Saari's complaint, on or about December 14, 1988, a "sum of money, supposedly belonging to a client of Smith Barney, was supposedly stolen from the desk of a Smith Barney employee." Saari alleged he was questioned about the theft and was later asked to take a polygraph test concerning the incident, which he refused. Saari claims he was then terminated for his refusal to take the polygraph examination.

Saari filed an action in federal district court, alleging (1) a violation of the Em-

ployee Polygraph Protection Act (EPPA), 29 U.S.C. §§ 2001–2009, (2) a violation of California Labor Code § 432.2, which makes it unlawful for an employer to demand or require that any employee submit to a polygraph test as a condition of continued employment, and (3) a state law claim of slander, alleging that Smith Barney or its agent had slandered him by stating that he had engaged in a theft of money, or that Saari himself had been required to publish those statements in responding to questions from prospective employers concerning the cause of his termination from Smith Barney.

As a condition of his employment with Smith Barney, Saari signed a Uniform Application for Securities Industry Registration ("U–4 Form") which provided in relevant part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register.

Saari became a registered representative of the New York Stock Exchange and thereby subject to its Rule 347 which provides that:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration.

After filing an answer to Saari's complaint, Smith Barney filed a motion to compel arbitration and stay proceedings pending arbitration of all three claims pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 3. The district court denied the motion, holding the underlying purposes of EPPA, as evidenced by its enforcement scheme and anti-waiver provision, demonstrate a congressional intent that access to the courts not be precluded by arbitration. The district court further held that the state polygraph protection claims were ex-

empt from arbitration as well, because of the "important role assigned to state law in carrying out the purposes of the EPPA." The district court later denied the motion to compel arbitration as to the slander claim.

Smith Barney timely appealed entry of the district court's order. We have jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 16, and reverse the orders of the district court.[1]

### STANDARD OF REVIEW

■ This court reviews the trial court's denial of a motion to compel arbitration *de novo*. *Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1449 (9th Cir.1986).

### I.

### EPPA CLAIMS

■ In denying arbitration to Smith Barney, the district court relied on *Nicholson v. CPC Int'l Inc.*, 877 F.2d 221 (3d Cir. 1989). The Third Circuit there held that Congress did not intend that the right to a judicial forum under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, could be displaced by arbitration, concluding that "ADEA is one of the statutory schemes that present the 'inherent conflict [with] arbitration' referred to by the Supreme Court in *Shearson [/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ]." *Id.* at 227.

In resolving a conflict between a Fourth Circuit case and the *Nicholson* case from the Third Circuit, the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), held that ADEA claims were subject to arbitration, impliedly overruling *Nicholson*. 111 S.Ct. at 1657. The Court emphasized that the Federal Arbitration Act (FAA) manifests a "liberal federal policy favoring arbitration agreements." 111 S.Ct. at 1651 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

Similar to Saari's situation here, the plaintiff in *Gilmer* was required to register

---

1. Although we are reversing Judge Pfaelzer, our reversal is based on an intervening change in

the law and not upon any error on the part of Judge Pfaelzer.

as a securities representative with the New York Stock Exchange, and was subject to N.Y.S.E. Rule 347. The Court held that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Id.* 111 S.Ct. at 1652. The Court noted that " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). The Court also noted that it had upheld arbitration agreements relating to claims arising under the Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933. *Id.* 111 S.Ct. at 1652.

The Court recognized that not all statutory claims may be appropriate for arbitration under the FAA, but " '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' " *Id.* (quoting *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354). The Court placed the burden on the plaintiff to show that Congress intended to preclude a waiver of a judicial forum for ADEA claims, and noted that if such an intention exists, it would be discoverable in the text of ADEA, its legislative history, or an "inherent conflict" between arbitration and ADEA's underlying purposes. *Id.*

Saari's reliance on *Nicholson* in the court below proved to be misplaced. As a substitute, Saari argues that the Court's rationale in *Gilmer* is specific to ADEA, and is not dispositive of the ability to arbitrate claims under EPPA. Saari attempts, contrary to his arguments in the district court, to distinguish EPPA from ADEA, on the basis of the analysis set forth in *Gilmer*.

### A. The Text and Legislative History of EPPA

Saari notes the statement of the *Gilmer* Court that ADEA's flexible approach to resolution of claims and the role of the EEOC under ADEA in "informal methods of conciliation, conference, and persuasion" indicates that "out-of-court dispute resolution, such as arbitration, is consistent with the statutory scheme established by Congress." *Gilmer*, 111 S.Ct. at 1654. Saari contends that the enforcement provisions of EPPA show no such flexibility.

Section 2002 of EPPA contains a broad general prohibition of employer use of lie detector tests. The prohibition is subject to exceptions listed in Sections 2006 and 2007 relating to governmental employers, national defense and security, F.B.I. contractors, certain private security firms, and a limited exemption for ongoing investigations.[2] The enforcement provisions in Section 2005 permit an assessment of a civil penalty by the Secretary of Labor in an amount not to exceed $10,000 and injunctive actions by the Secretary to restrain violations of the Act. The redress the Secretary may seek includes orders of employment, reinstatement, promotion, and payment of lost wages and benefits. The enforcement provisions also include a private civil action to be brought by the employee or prospective employee affected by such violation. *See* 29 U.S.C. § 2005(c). The available relief is identical to that available to the Secretary by injunctive action under Section 2005(b). The enforcement provisions also include a bar on the waiver of rights which provides:

> The rights and procedures provided by this chapter may not be waived by contract or otherwise, unless such waiver is part of a written settlement agreed to and signed by the parties to the pending action or complaint under this Act.

29 U.S.C. § 2005(d).

Saari contends that unlike the *Gilmer* Court's finding of ADEA's flexible approach to the resolution of claims, EPPA relies on the judicial process for the resolution of claims. We think, however, that Saari's reliance on the flexibility comment

---

**2.** *See* footnote 3 *infra.*

by the Court in *Gilmer* is misplaced. The Court made it very clear in *Gilmer* that the fact that a particular statute embodies a judicial enforcement process does not exclude arbitration. The Supreme Court rejected Saari's argument when it was made by Gilmer:

> Gilmer also argues that compulsory arbitration is improper because it deprives claimants of the judicial forum provided for by the ADEA. Congress, however, did not explicitly preclude arbitration or other nonjudicial resolution of claims, even in its recent amendments to the ADEA.

*Gilmer*, 111 S.Ct. at 1653–54.

The Court went on to note that arbitration is consistent with Congress' grant of concurrent jurisdiction over ADEA claims to state and federal courts because arbitration agreements, like a provision for concurrent jurisdiction, allow claimants a broader right to select a particular forum for resolving disputes, rather than limiting them solely to a judicial forum. *Id.* at 1654. The provision of a judicial forum for resolution of disputes is not inconsistent with the provisions of the FAA providing for an enforceable right of the parties to contractually agree to resolve those same disputes in an arbitral forum.

In addition, it should be noted that EPPA is not completely inflexible in its approach to resolution of employee claims, since either the Secretary or the employee may seek judicial relief, and the Secretary's authority to seek relief on behalf of the employee is textually identical to the employee's right to seek relief directly. Furthermore, even if the violation did not result in harm compensable in money damages or job-related restitution, the Secretary is empowered to impose and collect civil penal-

ties of up to $10,000. Thus, in the broader view of preventing abuse of polygraph testing in the employment arena, the Secretary has a broad arsenal of weapons with which to address problems. The lack of a specific commission, such as the EEOC, to which claims may be addressed in the first instance does not appear to be a compelling distinction between ADEA and EPPA.

■ Saari also argues that the anti-waiver provision of EPPA is different than the acts referred to in *Gilmer* in that the anti-waiver provision in EPPA provides that the "rights *and procedures* provided by this chapter may not be waived by contract or otherwise...." 29 U.S.C. § 2005(d) (emphasis added). Saari contends that the "and procedures" language evidenced a legislative intent that the procedures under EPPA were not to be waived. Saari argues that the procedures available under EPPA are solely judicial and therefore arbitration cannot oust him from the judicial arena.

Saari's reliance on the "and procedures" language is unavailing. Saari is arguing that those words make the judicial forum provisions of EPPA exclusive of arbitration. This rationale does not stand in light of *Gilmer*. In *Gilmer*, the Court noted that the substantive rights enforced by arbitration are identical to those enforced in a judicial forum, the only difference being an agreement by the parties to submit the "resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 111 S.Ct. at 1652.

The term "procedures" is too broad to relate solely to forum selection. In order for an employer to avail itself of the provisions relating to ongoing investigations in Section 2006(d),[3] it would be required to

---

3. (d) Limited exemption for ongoing investigations. Subject to sections 2007 and 2008 of this title, this chapter shall not prohibit an employer from requesting an employee to submit to a polygraph test if—
   (1) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage;
   (2) the employee had access to the property that is the subject of the investigation;
   (3) the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation; and
   (4) employer executes a statement, provided to the examinee before the test, that—
   (A) sets forth with particularity the specific incident or activity being investigated and the basis for testing particular employees,

follow certain "procedures." It is the type of procedure found in 2006(d) that an employer may attempt to have a prospective employee waive as a condition of employment, and that the anti-waiver provision would invalidate if extracted from the employee.

Furthermore, the "and procedures" language in EPPA is no stronger than the anti-waiver provisions found in the Sherman Act, the Securities Exchange Act of 1934, the Securities Act of 1933, and RICO. Those acts provide either that the act's provisions may not be waived or that the district court shall have exclusive jurisdiction, which the Court noted in *Gilmer* has been held not to exclude arbitration. *Gilmer*, 111 S.Ct. at 1651–1652.

Equally unconvincing are Saari's arguments concerning the legislative history of EPPA. Rejection by Congress of an amendment to EPPA which would have exempted the banking and securities industry from the scope of EPPA does not indicate an intention to exclude arbitration as a possible forum.

### B. *Inherent Conflict*

■ Saari argues that requiring arbitration in his case creates an inherent conflict with EPPA's underlying purposes [4] which rely on the judicial forum as an essential feature of the Act. Saari bases his argument on the enforcement provision of the EPPA which prohibits a waiver of both the rights and procedures available under the EPPA. As stated *supra* in section I.A., this argument lacks. merit.

> (B) is signed by a person (other than a polygraph examiner) authorized to legally bind the employer,
> (C) is retained by the employer for at least 3 years, and
> (D) contains at a minimum—
> (i) an identification of the specific economic loss or injury to the business of the employer,
> (ii) a statement indicating that the employee had access to the property that is the subject of the investigation, and
> (iii) a statement describing the basis of the employer's reasonable suspicion that the employee was involved in the incident or activity under investigation.

■ Saari further argues that if he is compelled to arbitration, the panel of arbitrators would be drawn from the securities industry, which would be inimical to the underlying purposes of the EPPA. This argument is without merit. "[M]istrust of the arbitral process" was clearly rejected as a reason for avoiding arbitration by the Court in *Gilmer*. *Gilmer*, 111 S.Ct. at 1656, n. 5.

We conclude that Saari's claims under EPPA were subject to arbitration, and therefore the district court erred in denying Smith Barney's motion to compel arbitration and to stay the case pending arbitration.

## II.

### SCOPE OF RULE 347 AND SAARI'S U-4 FORM

■ Saari argues that none of his claims are arbitrable because they do not "arise out of" his employment as a registered representative, and therefore are not within the scope of N.Y.S.E. Rule 347, as incorporated in his U–4 form. Saari contends that his claims do not implicate any customers, the handling of their accounts, or his performance as a broker. Relying on decisions from both the Eighth Circuit [5] and the Sixth Circuit [6], Saari argues that a theft of customer property would be arbitrable, whereas a theft of employee property would not. He also argues that this dispute does not involve termination of employment within the scope of Rule 347, but discharge for an illegal purpose.

29 U.S.C. § 2006(d).

4. Saari contends that the underlying purposes of the EPPA are to protect employees from the employer's superior economic power and its ability to circumvent statutory prohibitions on the use of polygraph testing.

5. *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir.1984).

6. *Aspero v. Shearson American Express, Inc.*, 768 F.2d 106 (6th Cir.), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985).

The plain language of Rule 347 provides that *"any controversy* between a registered representative and any member or member organization *arising out of* the *employment or termination of employment* of such registered representative by and with such member or member organization *shall be settled by arbitration....*" (emphasis added). Saari was admittedly discharged from employment. He claims his discharge was in violation of EPPA, which is disputed by Smith Barney. Saari's argument that the controversy did not arise out of the termination of his employment is without merit.

### III.

### STATE LAW CLAIMS

A. *California Labor Code Section 432.2*

Saari argues that his state polygraph claim is not arbitrable because Congress, by exempting federal polygraph claims from arbitration, also intended to exempt state polygraph claims. This argument has no merit. As pointed out above, there is no exemption of federal polygraph claims.

■ Saari also relies on the non-preemption provisions of EPPA in Section 2009 which provide: "this chapter shall not preempt any provision of any State or local law ... that prohibits lie detector tests or is more restrictive with respect to lie detector tests than any provision of this chapter." Saari contends that Section 2009 saves his state law claims from arbitration because the California law is only more restrictive than EPPA if its judicial enforcement remains intact.

■ Section 2009 merely protects state statutory remedies which are more protective of the employee than EPPA. It does not, however, determine whether the state law claim should be arbitrated or adjudicated in the federal district court. To the extent that California's preference for a judicial forum would interfere with the choice expressed by Congress in the FAA, it is preempted. *See Perry v. Thomas,* 482 U.S. 483, 491, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987) (state statute providing a judicial forum for wage/commission claim based on the sales of securities which is in conflict with the FAA must give way).

B. *The Slander Claim*

■ Saari asserts that his slander claim is not subject to arbitration because, based on *Morgan,* the connection between the dispute over whether Saari stole money from a fellow worker's desk and his employment is too tenuous, and, therefore, did not "arise out of his employment or termination of employment" within the scope of Rule 347.

In *Zolezzi,* the alleged defamatory statements related directly to Zolezzi's handling of customer accounts while employed by Dean Witter, and this court held the defamation claim to be arbitrable. *Zolezzi,* 789 F.2d at 1450–51. In *Morgan,* the alleged slanderous remarks were "that Smith Barney personnel told Morgan's fellow office workers that he stole things from their desks at night." *Morgan,* 729 F.2d at 1168. The Eighth Circuit found the connection between this dispute and Morgan's employment to be tenuous, and held the claim outside the scope of Rule 347. *Id.* In the present case, however, Saari alleged that "a sum of money, *supposedly belonging to a client of Smith Barney,* was supposedly stolen from the desk of a Smith Barney employee." The claim that a *client's* money was stolen from an employee's desk implicates Saari's job as a broker. In regards to arbitration, *Zolezzi* and *Morgan* appear to differentiate between stealing a client's money and stealing the employer's money. We neither accept nor reject the decision in *Morgan,* leaving that case for another day.

### CONCLUSION

The Supreme Court, most recently in *Gilmer,* has repeatedly told us that the Federal Arbitration Act manifests a liberal policy favoring arbitration agreements. The distinctions Saari advances between EPPA and ADEA are not convincing. Congress has not evidenced any intention that EPPA claims not be arbitrable if a proper contrac-

tual base is found. The state law claims are also subject to arbitration and the district court was in error in denying Smith Barney's motions.

VACATED AND REMANDED. COSTS TO APPELLANT.