**AIRS INTERNATIONAL, INC., Plaintiff,**

v.

**PERFECT SCENTS DISTRIBUTIONS, LTD., Defendant.**

No. C 95–20002 EAI.

United States District Court,
N.D. California,
San Jose Division.

Oct. 17, 1995.

Cynthia Sandberg, Watsonville, CA, for Plaintiff.

Robert Luther, Hoge, Fenton, Jones & Appel, San Jose, CA, for Defendant.

## ORDER DENYING PERFECT SCENTS' MOTION FOR SUMMARY JUDGMENT

INFANTE, United States Magistrate Judge.*

### I. *Introduction and Background*

This is an action involving agreements for distribution of perfume products in Canada. Plaintiff Airs International, Inc. ("Airs") alleges that defendant Perfect Scents Distributions, Ltd. ("Perfect Scents") breached the parties' 1993 distribution contract. Perfect Scents has "cross-claimed" against Airs and its president, Stephen Marcus,[1] alleging that such contract was superseded by a 1994 agreement between the parties, and that Airs has breached this superseding contract. Perfect Scents now moves for summary judgment, contending that there are no genuine

issues of material fact and that it is entitled to judgment as a matter of law on both Airs' claims and its cross-claims.

### A. *Undisputed Facts*

Airs is a California corporation with its principal place of business in Watsonville, California. Perfect Scents is a Canadian corporation with its principal place of business in British Columbia. The amount in controversy exceeds $50,000.[2]

On March 31, 1993, the parties entered into a written contract entitled "Exclusive Distribution Contract" (the "1993 contract"). The 1993 contract gave Perfect Scents the right to distribute Airs' perfume products in Canada.[3]

On August 18, 1994, Airs advised Perfect Scents that the latter had breached the parties' 1993 contract and demanded that Perfect Scents cure its default within a specified period of time.[4] Shortly thereafter, the parties agreed to terminate the 1993 contract and, on August 31, 1994, they entered into a written contract entitled "Resolution of Distribution Contract" (the "1994 contract").[5]

The 1994 contract pertinently provides:

"This agreement replaces in its entirety the [1993 contract] by and between Perfect Scents [and] Airs ... [¶] Both [Perfect Scents] and Airs agree as follows: [¶] That the [1993 contract] is hereby terminated, cancelled, and otherwise considered null and void, with the exception of any outstanding invoices still owed Airs by [Perfect Scents].... Both [Perfect Scents] and Airs hereby relinquish and forever

---

* The parties have consented pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 to have all proceedings conducted before a magistrate judge. *See* respective Consents to Proceed Before Magistrate Judge Edward A. Infante, each dated September 25, 1995.

1. Marcus was known as Mark Steven Erickson prior to January 26, 1995 when he legally changed his name. Answer to Cross–Claim, filed February 14, 1995. The Cross–Claim was brought the day before the name change, although it misspelled Marcus' surname as "Erikson". The Court will refer to the individual cross-defendant by his current legal name, Marcus.

2. Complaint, filed January 3, 1995, ¶¶ 1–3 (premising federal subject matter jurisdiction on the diversity of citizenship of the parties, 28 U.S.C. § 1332(a)(2)); *but compare* Answer, filed January 25, 1995, at ¶¶ 1–3 (admitting citizenship allegations but denying the amount-in-controversy), *with*, Cross–Claim, filed January 25, 1995, ¶ 2 (affirmatively alleging that the amount-in-controversy exceeds $50,000).

3. Complaint, ¶ 4, and Exhibit A (copy of the 1993 contract); Answer, ¶ 4 (admitting same).

4. Complaint, ¶ 6; Answer, ¶ 6 (admitting same).

5. Complaint, ¶ 7, and Exhibit B (copy of the 1994 contract); Answer, ¶ 7 (admitting same).

surrender any and all rights and responsibilities conferred upon each by said [1993 contract].... [¶] That this agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto and contains all of the covenants and agreements between the parties. Each party to this agreement acknowledges that no representation, inducements, promises, or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that no other agreement, statement, or promise not contained in this agreement shall be valid or binding on either party. Any modification of this agreement will be effective only if it is in writing and signed by the party to be charged." [6]

The 1994 contract was signed by Marcus both in his capacity as a principal of Airs and in his personal capacity as guarantor of Airs' obligations thereunder.[7]

### B. *Airs' Allegations*

Airs alleges that Perfect Scents breached the 1993 contract, and that Airs lost approximately $20,000 from Perfect Scents' failure to purchase merchandise as specified under the contract prior to its termination, as well as an additional $95,000 worth of merchandise which Perfect Scents would have been required to purchase had the parties not prematurely terminated the contract.[8]

Airs asserts that it would not have voluntarily terminated the 1993 contract but for the fact that Perfect Scents fraudulently induced Airs to enter into the superseding 1994 contract by falsely representing, both orally and in writing, that Perfect Scents

"(a) had cultivated some 140 active customer accounts in Canada and that it should have 200 such accounts by the end of 1994, (b) had aggressively and faithfully serviced those accounts, and (c) had projected Canadian sales of [Airs'] products in 1995 at $500,000".[9]

Airs alleges that in actuality Perfect Scents "(a) [had] only 85 or so active accounts (some 40% less than that represented by [Perfect Scents]), (b) had not contacted some of those accounts in over a year, and (c) because of these inadequacies, could not reasonably expect anywhere near $500,000 in sales in 1995".[10]

Airs claims that it is excused from performance under, and is entitled to rescind, the 1994 contract because of Perfect Scents' fraud. Airs intends the service of the summons and complaint to serve as notice of its intent to rescind and an offer to restore all consideration furnished by Perfect Scents.[11]

Airs seeks $20,000 plus accrued interest in compensatory damages, $95,000 in punitive damages, and attorney's fees and costs.

### C. *Perfect Scents' Cross-Claim*

Perfect Scents alleges in its Cross-Claim that Airs and Marcus breached the 1994 contract by failing to make a $3,750 payment due and owing on December 31, 1994.[12] Perfect Scents contends that the contractual payments due and owing on the 1994 contract through June 30, 1997 total an additional 56,250.[13] Perfect Scents seeks $63,300 in compensatory damages plus interest, attorney's fees and costs.

## II. *Discussion*

### A. *Summary Judgment Standard*

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions,

---

6. Complaint, Exhibit B (copy of 1994 contract, preamble at p. 1 thereof).

7. *Id.*, Exhibit B (copy of 1994 contract, at ¶ 16 ["Mark Steven Erickson also agrees, in his personal capacity, to be liable for payment of the funds specified herein as per the terms of this agreement. The signature of Mark Steven Erickson upon this document shall be considered to have been subscribed in both his personal capacity and his capacity as principal of AIRS."]).

8. *Id.*, ¶¶ 23–24.

9. *Id.*, ¶ 12.

10. *Id.*, ¶ 13.

11. *Id.*, ¶ 18.

12. Cross–Claim, ¶¶ 9–10.

13. Declaration of Ridgley Clark ("Clark Decl."), ¶¶ 2–3.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P. 56(c). The moving party bears the initial burden of establishing the non-existence of any dispute over the material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial' ". *Id.,* quoting Fed.R.Civ.P. 56(e). A dispute about a material fact is genuine if a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B. *Ripeness of the Motion*

Airs argues that Perfect Scents' summary judgment motion is premature because it is "still actively engaged in its discovery procedures".[14]

"A party against whom a claim ... is asserted ... may, *at any time,* move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b) (emphasis added). Additionally, "[a] party seeking to recover upon a ... counterclaim or cross claim ... may, *at any time after the expiration of 20 days from the commencement of the action* ... move without or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed.R.Civ.P. 56(a) (emphasis added). However, "[s]hould it appear from the *affidavits* of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had ..." Fed.R.Civ.P. 56(f) (emphasis added).

■ Because Perfect Scents' motion is obviously otherwise timely, the Court construes Airs' ripeness objection as an application for a continuance pursuant to Rule 56(f). A party invoking Rule 56(f) "bears the burden of showing 'what facts it hopes to discovery to raise a material issue of fact' ". *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991), quoting *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1306 n. 1 (9th Cir.1986). "References in memoranda ... to a need for discovery do not qualify as motions under Rule 56(f). Rule 56(f) requires affidavits setting forth *the particular facts expected from the movants discovery. " Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986) (emphasis added); e.g., *Goehring v. Wright,* 858 F.Supp. 989, 995–96 (N.D.Cal.1994) (Rule 56(f) request denied where plaintiff failed to supply "the *requisite* sworn statement from his counsel attesting to the specific discovery still needed and why it could not have been conducted already") (emphasis in original).

■ Airs has not made any effort whatsoever to set forth in affidavits the particular facts expected from its anticipated discovery and their potential bearing on the instant motion. The request for a Rule 56(f) continuance is therefore denied.

### C. *Airs' Claims*

#### 1. *rescission claim re 1994 contract*

Perfect Scents contends that Airs' claim for rescission of the 1994 contract because of alleged fraud in its inception is defeated by the parole evidence rule.

##### a. *the parole evidence rule*

■ "[W]here the parties to a contract have set forth the terms of their agreement in a writing which they intend as the final and complete expression of their understanding, it is deemed integrated and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement". *Banco Do Brasil, S.A. v. Latian, Inc.,* 234 Cal.App.3d 973, 285 Cal.Rptr. 870, 885 (1991) (construing Cal.Code Civ. Proc. § 1856), *rev. denied, cert. denied,* 504 U.S. 986, 112 S.Ct. 2967, 119 L.Ed.2d 588 (1992). Nevertheless, parole evidence of

---

14. Airs' Brief, at pp. 3–4.

fraud is admissible insofar as it does not contradict the terms of the writing. *Brinderson–Newberg v. Pacific Erectors,* 971 F.2d 272, 280–81 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 1267, 122 L.Ed.2d 663 (1993).

> " 'Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing.' "

*Continental Airlines v. McDonnell Douglas,* 216 Cal.App.3d 388, 264 Cal.Rptr. 779, 796 (1989) (emphasis eliminated), *rev. denied* (1990), quoting *Bank of America v. Pendergrass,* 4 Cal.2d 258, 263, 48 P.2d 659 (1935) (no emphasis in original).[15]

### b. *integrated 1994 contract*

It is undisputed that the 1994 contract is an integrated one, inasmuch as the contract contains an unambiguous and comprehensive merger clause.

> "The crucial issue is whether the parties *intended* the written instrument to serve as the exclusive embodiment of their agreement. The instrument itself may help to resolve that issue. It may state, for example, that "there are no previous understandings or agreements not contained in the writing", and thus express the parties' "intention to nullify antecedent understandings or agreements".' Indeed, if such a clause is adopted and used by the parties, it may well be conclusive on the issue of integration."

*Banco Do Brasil, supra,* 285 Cal.Rptr. at 886 (emphasis in original; citations omitted).

Here, as in *Banco Do Brasil,* the writing-in-question "leaves no doubt that it is complete and was intended by the parties to be a complete expression of their understanding". *See id.,* at 887. "It is difficult to imagine how the parties could have more clearly expressed their intent to make the written instrument a full and complete expression of their agreement." *Id.* Moreover, there is no evidence of the surrounding circumstances presented on the instant motion which would naturally subvert the plain terms of the integration clause. Thus, this is one of those cases in which the integration clause should be regarded as "conclusive" or "controlling". *See id.,* at 886 and 887.

### c. *fraud exception*

■ Nonetheless, as noted, evidence of alleged fraud in the inducement remains admissible unless it involves a " 'promise directly at variance with the promise of the writing' ". *Continental Airlines, supra,* 264 Cal. Rptr. at 796, quoting *Pendergrass, supra,* 4 Cal.2d at 263, 48 P.2d 659.

■ Perfect Scents contends that any oral promises which Airs may have relied upon in entering into the 1994 contract are necessarily "directly at odds" with that provision of the 1994 contract which provides: " 'Each party ... acknowledges that no representation, inducements, promises or agreements, orally or otherwise, have been made by any party ... which are not embodied herein ...' "[16] Perfect Scents' argument is too facile and lacks support in the law. None of the cases cited by Perfect Scents involve allegations of fraud in the inducement which were rendered inadmissible merely because they necessarily contradicted a merger clause purporting to nullify all antecedent understandings or agreements. This is because the law

---

**15.** California courts are in the minority in allowing the introduction of parole evidence only when the alleged fraud does not vary the terms of an integrated writing. "[T]he majority rule admits the parol or extrinsic evidence even though it conflicts with the terms of the integrated written instrument." *Touche Ross, Ltd. v. Filipek,* 7 Haw.App. 473, 778 P.2d 721, 728 (1989); see, *Pinnacle Peak Developers v. TRW Investment Corp.,* 129 Ariz. 385, 631 P.2d 540 (Ariz.App.1980) (collecting cases); e.g., *Howell v. Oregonian Publishing Co.,* 85 Or.App. 84, 735

P.2d 659 (1987). The California approach, and the *Pendergrass* decision in particular, has been "severely criticized by scholarly commentators", *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 261 Cal.Rptr. 735, 746, *rev. denied* (1989), most saliently in an oft-cited law review article, Sweet, "Promissory Fraud and the Parole Evidence Rule", 49 Cal.L.Rev. 877 (1961).

**16.** Perfect Scents' Reply Brief, at p. 7 (quoting the 1994 contract).

is otherwise. A contract's merger clause alone cannot preclude admission of extrinsic evidence of fraud-in-the-inducement thereof.

"If a written document, mutually assented to, declares in express terms that it contains the entire agreement of the parties, and that there are no antecedent or extrinsic representation, warranties, or collateral provisions that are not intended to be discharged and nullified, this declaration is conclusive [only] as long is it has itself not been set aside by a court on the grounds of fraud ... [¶] Such a provision as this, even though it is contained in a complete and accurate integration, does not prevent proof of fraudulent representations by a party to the contract ... Such evidence may directly contradict the writing; but at the same time it shows the whole writing to be void or voidable, including the statement by which representations ... are denied."

3 *Corbin on Contracts*, § 578 (4th ed. 1986), at pp. 402–07 (footnotes omitted).[17] "The rule against contradicting integrated writings prohibits attempts to contradict the *agreements*, not false statements of the facts", *id.* (1994 supplement), at p. 545 (emphasis by treatise), and a clause which provides that "there *were* no warranties or representations made" is "an assertion of fact ... no more binding on [a party to the contract] than if the contract asserted that Dewey won the election of 1948 instead of Truman". *Id.* Thus, "[i]t is helpful for courts to try to maintain this distinction between recitals of fact and recitals of agreement ..." *Id.*

Perfect Scents has not suggested that the alleged misrepresentations are at variance with the 1994 contract's recitation of the parties' principal obligations as opposed to simply being "at odds" with factual assertions contained in the contract concerning the absence of collateral representations. Accordingly, parole evidence of the alleged

fraud is admissible, and Perfect Scents' motion for summary adjudication of Airs' rescission claim must be denied.

2. *claim for breach of 1993 contract*

Perfect Scents asserts that, as a matter of law and whether or not the 1994 contract is rescinded, Airs cannot prevail on its claim for breach of the 1993 contract because such earlier pact was extinguished under the doctrine of novation.[18]

■■■ " 'Novation is the substitution of a new obligation for an existing one.' " *Wells Fargo Bank v. Bank of America*, 32 Cal. App.4th 424, 38 Cal.Rptr.2d 521, 525, *rev. denied* (1995), quoting Cal.Civ.Code § 1530. "A novation ... amounts to a new contract which supplants the original agreement and 'completely *extinguishes* the original obligation ...' " *Wells Fargo Bank, supra*, 38 Cal.Rptr.2d at 525, quoting 1 Witkin, *supra*, § 906, at p. 811 (emphasis Witkin's). " 'In every novation there are four essential requisites: First, a previous valid obligation; second, the agreement of all the parties to the new contract; third, the extinguishment of the old contract; and fourth, the validity of the new one.' " 15 *Williston on Contracts*, § 1869 (3d ed. 1972), at p. 613 (citations omitted). "The burden of proof is on the party asserting that a novation has been consummated." *Howard v. County of Amador*, 220 Cal.App.3d 962, 269 Cal.Rptr. 807, 817 (1990).

■■■ Where there has been a novation, "the rights and duties of the parties must be governed by the new agreement alone, and 'a failure to perform (thereunder) does not, under any theory of rescission or revivor, operate to breathe new life into the dead and extinguished obligation.' " *Alexander v. Angel*, 37 Cal.2d 856, 862, 236 P.2d 561 (1951), quoting *Beckwith v. Sheldon*, 165 Cal. 319, 324, 131 P. 1049 (1913). Thus, "[i]f the sub-

---

17. See also, 1 Witkin, *Summary of California Law*, "Contracts", § 410 (9th ed.1987), at pp. 368–69 ("A party to a contract who has been guilty of fraud in its inducement cannot absolve himself from the effects of his fraud by any stipulation in the contract, either that no representations have been made, or that any right which might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and

parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision."); e.g., *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App.4th 985, 38 Cal.Rptr.2d 783, 787–90 (1995).

18. *See* Perfect Scents' Brief, at pp. 6–7.

stituted contract has itself been broken by either party, the other party's rights are dependent on the substituted contract. The breach [does] not revive the former discharged [contract]." 6 *Corbin, supra,* § 1293 & n. 11 (collecting cases, including *Alexander, supra*). "On the other hand, the substituted contract may itself be voidable for fraud ... or other reasons; and if the power of avoidance is exercised, the avoided contract is nullified ... as a discharge. The prior [contract] then becomes again enforceable." *Id.,* at p. 196 & n. 14; see, *Beckwith, supra,* 165 Cal. at 324, 131 P. 1049 (the question "whether a novation has taken place" may be stated "in other words, whether the new contract was entered into without fraud"); but see, *Producers Fruit Co. v. Goddard,* 75 Cal.App. 737, 755, 243 P. 686 (1925) (original contract "*ipso facto et eo instanti* passed out of existence and became *functus officio* ... even [though] the statute of frauds had been successfully interposed against the enforcement of the terms of the new agreement itself"); *George Foreman Associates, Ltd. v. Foreman,* 389 F.Supp. 1308, 1315–16 (N.D.Cal.1974) (Peckham, J., citing *Goddard, supra*) (prior contract not revived despite invalidity of the substituted agreement), *aff'd on other grounds,* 517 F.2d 354 (9th Cir.1975).

In *Goddard, supra,* a seventy-year old state intermediate appeals court decision, "the parties to a written contract substituted an oral agreement which was not to be performed within a year. After two years, defendant refused to perform further, and plaintiff sued for breach of the original written contract, the terms of which had not yet run. Although the second contract was unenforceable under the statute of frauds, the court held that it was effective to discharge the first." 1 Witkin, *supra,* § 907, at pp. 812–13 (discussing *Goddard,* 75 Cal.App. at 755, 243 P. 686). Witkin, however, astutely criticizes *Goddard:* "Such a result would appear sometimes to be contrary to the intent of the parties, and hence inconsistent with the theory of novation." *Id.,* at p. 813, citing 14 Cal.L.Rev. 408 (1926) (case note re *Goddard*).

"If ... the court [found] that the parties intended the rescission of the first contract to be absolute, and not conditional upon the enforceability of the second agreement, the decision in [*Goddard*] is undeniably correct. The parties were free to rescind the agreement ...

"But if the court merely meant to say that the second agreement was a substitute for, and not an alteration of the first agreement, without any implication as to whether or not the rescission of the first agreement was to be conditional upon the validity of the second, the decision of the court is wrong. The language of the [decision] seems to show that the opinion of the court was that whenever the requirements of the Civil Code for a novation, i.e., the substitution of a new obligation between the same parties with intent to extinguish the old, are fulfilled, there must invariably follow the result prescribed by the Code, the substitution of the new obligation for the old. The error in this line of reasoning lies in the fact that no effort is made to determine the intent of the parties.

"The question of whether or not a later contract will constitute a novation of a prior contract should always be determined in accordance with the intention of the parties. When they intend the rescission of the first contract to be unconditional, that should be the case; but when the discharge of the first agreement is intended to be conditional upon the enforceability of the second, there should be no novation when the second agreement cannot be enforced."

Note, *supra,* 14 Cal.L.Rev. at 410.

The critique of *Goddard* is persuasive. Parties to a contract may, of course, always extinguish it simply by agreeing to rescind it. Cal.Civ.Code §§ 1688 and 1689(a). This, though, does not of itself constitute a novation. "[A]n essential element of a novation is the *validity* of [a] new contract". 1 Witkin, *supra,* § 907, at p. 812 (emphasis Witkin's); see also, 15 *Williston, supra,* § 1869 at p. 613 ("validity of the new [contract]" among the four requisites for finding a novation); e.g., *Adler v. Friedman,* 16 Cal. 138, 140 (1860) ("the new agreement must be valid in itself"). If the new contract

is invalid, there is no novation and the parties' previous obligations are not extinguished. See, 6 *Corbin, supra,* § 1293 at p. 196 & n. 14. *Goddard,* read as a case concerning novation, improperly ignores the elementary logic of the doctrine. If, on the other hand, *Goddard* is saved by being construed to stand merely for the uncontroversial proposition that a contract may be unconditionally rescinded by consent of the parties, see Note, *supra,* 14 Cal.L.Rev. at 410, 411 (*Goddard* "may be interpreted as not in conflict" with prevailing law), it is no longer, as it purports to be, a decision dealing with the novation doctrine. This Court is thus persuaded that the California Supreme Court would have decided *Goddard* differently, and therefore elects to disregard such ruling and the authorities which follow its reasoning.[19]

There is no evidence introduced on the instant motion that the parties intended to unconditionally rescind the 1993 contract notwithstanding the validity *vel non* of the 1994 contract. Indeed, to the contrary, the express terms of the 1994 contract indicates that it "replaces" the earlier one, suggesting that the validity *ab initio* of the 1994 contract was an intended condition upon the relinquishment of rights under the 1993 contract. In this context, if the 1994 contract is ultimately determined invalid in its inception because Airs proves it was procured by fraud, the purported rescission of the 1993 contract would be ineffective and the 1993 contract would be revived. Perfect Scents' motion for summary adjudication of Airs' claim for breach of the 1993 contract must accordingly be denied.

#### D. *Perfect Scents' Cross–Claim*

Perfect Scents also seeks summary judgment on its cross-claim for Airs' alleged breach of the 1994 contract. However, because, as discussed above, there are material factual issues concerning Airs' affirmative

claim for rescission of such contract, Perfect Scents is not entitled to a judgment on its cross-claim at this time.

#### III. *Order*

Accordingly, IT IS HEREBY ORDERED that Perfect Scents' motion for summary judgment is DENIED.

SO ORDERED.

---

19. See, *Martinez v. Asarco, Inc.,* 918 F.2d 1467, 1473 (9th Cir.1990) (state intermediate appellate court decision may be disregarded if the federal court is convinced that the highest court of the same state would decide otherwise). Perfect Scents' reliance on the California Supreme Court's decision in *Alexander v. Angel, supra,* is misplaced. That decision merely holds that a "'failure to perform'" under, i.e, a breach of, a valid substituted contract cannot revive its extinguished predecessor. 37 Cal.2d at 862, 236 P.2d 561, quoting *Beckwith, supra,* 165 Cal. at 324, 131 P. 1049. *Alexander* says nothing about the effect of a substituted contract rendered invalid due to fraud or other defect in its formation.