William L. THIELE, Jr., Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, and Does 1 Through 100, Inclusive, Defendants.

No. 97CV1887–B (AJB).

United States District Court,
S.D. California.

July 23, 1999.

John S. Adler, Law Offices of John S. Adler, San Diego, CA, Richard Bryson, Law Offices of Richard Bryson, San Diego, CA, for plaintiff.

Terry E. Sanchez, Munger, Tolles & Olsen, LLP, Los Angeles, CA, for defendant.

## ORDER (1) DENYING DEFENDANTS' MOTION FOR RECONSIDERATION; and (2) GRANTING PLAINTIFF'S MOTION TO MODIFY

BREWSTER, Senior District Judge.

### I. Introduction

On January 20, 1999, Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("ML"), filed a Motion for Reconsideration of this Court's December 22, 1998 Order denying, in part, Defendant's motion to compel arbitration. On January 29, 1999, Plaintiff William L. Thiele ("THIELE") filed a Motion to Lift the Stay imposed by the December 22, 1998 Order which also granted, in part, Defendant's motion to compel arbitration. The Court DENIES Defendant's Motion for Reconsideration, and GRANTS Thiele's Motion to Lift the Stay of the NYSE Arbitration.

### II. Discussion

The facts of this case are set forth in the Court's previous Order and need only be briefly reiterated here. Thiele worked as a financial consultant for ML from 1972 until 1996. At the start of his employment at ML, Thiele executed a New York Stock Exchange ("NYSE") Form RE–1, containing a compulsory arbitration clause, to register him as a securities representative with the NYSE. Moreover, during his employment at ML, on at least July 22, 1981, July 11, 1989, October 26, 1994, and July 25, 1995, Plaintiff executed a "Form U–4," as required, to register himself in additional states. The Form U–4 applications also contain compulsory arbitration clauses. Defendant discharged Plaintiff on December 26, 1996. On October 21, 1997, Plaintiff filed a complaint with this Court alleging (1) age discrimination in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 – 634, and the California Fair Employment and Housing Act ("FEHA"), Cal Gov.Code

§§ 12900 – 12996; (2) termination in violation of public policy; (3) breach of implied employment contract; and (4) tortious interference with prospective advantage.

Presently before the Court is Defendant's request for reconsideration of the Court's December 22, 1999 Order which held that Plaintiff's claims are governed by the arbitration clause contained in the Form U–4 executed on July 25, 1995, that the clause is unenforceable as to Plaintiff's ADEA and FEHA claims, and therefore Plaintiff is entitled to proceed towards a jury trial in his ADEA and FERA claims. The Court also held that the arbitration clause is enforceable as to Plaintiff's public policy, contract, and tort claims, and stayed the arbitration of those claims pending resolution of Thiele's ADEA and FEHA claims. In addition to Defendant's Motion for Reconsideration, Plaintiff has moved to lift the stay on the arbitration of his public policy, contract, and tort claims.

## A. Defendant Merrill Lynch's Motion for Reconsideration

### 1. The OWBPA Amendments to the ADEA

■ Defendant ML argues that the Court erred in holding that the amendments to the ADEA implemented by the Older Workers' Benefit Protection Act's ("OWBPA"), Pub L. 101–433, 101 Stat. 978 (1990) (amending 29 U.S.C. §§ 621, 623, 626, 630), preclude predispute arbitration agreements. The Court disagrees and confirm its previous holding.

First, ML contends that this Court's holding is contrary to binding Ninth Circuit authority. Defendant ML relies on *Saari v. Smith Barney, Harris Upham & Co.*, 968 F.2d 877 (9th Cir.1992). In *Saari*, the Ninth Circuit interpreted a provision of the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. §§ 2001–2009, which states that "[t]he rights and procedures provided by this chapter may not be waived by contract or otherwise, unless such waiver [meets certain requirements]." 29 U.S.C. § 2005(d). The Ninth Circuit held that this provision did not preclude enforcement of Sarri's Form U–4 which included an arbitration clause. *See Saari,* 968 F.2d at 882. The Ninth Circuit in *Saari* interpreted the applicability of *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), to arbitration cases, stating: "The Court made it very clear in *Gilmer* that the fact that a particular statute embodies a judicial enforcement process does not exclude arbitration." *Id.* at 881. *Saari* is distinguishable because it does not involve the ADEA; it is a case interpreting the waiver provisions of the EPPA and any commentary on *Gilmer's* reading of the ADEA is dicta.

■ Furthermore, the Ninth Circuit also addressed *Gilmer* in *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998), *cert denied,* —— U.S. ——, 119 S.Ct. 465, 142 L.Ed.2d 418 (1998). In *Duffield,* the court held that a compulsory arbitration clause in a Form U–4 was unenforceable in an employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e.– 2000e–17, and FEHA. *See Id.* The *Duffield* court mentioned the OWBPA amendments to the ADEA in a footnote:

> After the Supreme Court grated certiorari in *Gilmer,* Congress amended the ADEA to provide that all waivers of rights under the Act, *apparently including the right to a jury trial,* 29 U.S.C. § 626(c), must be "knowing and voluntary." ... A waiver is not considered knowing and voluntary if the individual waives "rights or claims that may arise after the date the waiver is executed."

*Id.* at 1190 n.5 (citations omitted) (emphasis added). Thus, in dicta, the Ninth Circuit in Duffield reads the OWBPA amendments to the ADEA to include the right to a jury trial. This Court follows the guidance provided by *Duffield.*

■ Second, ML argues that Congress did not intend to preclude all pre-dispute arbitration agreements when it enacted the OWBPA and that to interpret the

OWBPA otherwise leads to an absurd result:

A court must not give effect to the plain language of a statute if doing so would reach an absurd result. *See Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1410 n. 5 (9th Cir.), *amended on other grounds*, 140 F.3d 849 (9th Cir.1998); *United States v. Esparza–Ponce*, 7 F.Supp.2d 1084, 1092 (S.D.Cal.1998) (Rhoades, J.). The Court's view that the phrase "any right" encompasses procedural rights such as the right to a jury trial leads to an absurd result. Under the Court's reasoning, parties could *never* enter into pre-dispute agreements to arbitrate ADEA claims because by definition, they would be waiving rights that had not yet arisen.

(Def.'s Mem. P. & A. at 7.)[1] Defendant ML is correct in noting that under this Court's interpretation, parties could never enter into pre-dispute agreements to arbitrate ADEA claims Under § 626(f)(1)(C), a waiver is knowing and voluntary only if the "individual does not waive rights or claims that may arise after the date the waiver is executed." Thus, applying the knowing and voluntary requirements of § 626 to procedural rights such as the right to a jury trial does preclude pre-dispute arbitration agreements. The Court disagrees with Merrill Lynch's assertion, however, that this result is "absurd." Taking Congress at its word requires this Court to hold that the OWBPA does indeed preclude pre-dispute arbitration agreements.

**1.** The First Circuit, in *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 170 F.3d 1, 13 (1st Cir.1999), also held that "that Congress did not intend to preclude pre-dispute arbitration agreements when it enacted the OWBFA." Because this is contrary to the language in the statute, the Court respectfully declines to follow the reasoning of the *Rosenberg* Court.

**2.** Defendant Merrill Lynch also argues that the 1995 Form U–4 did not create a contract to arbitrate with the NYSE or NASD because, by Plaintiff's own admission, he had already registered with the NYSE and NASD and did not need to re-apply. (*See* Thiele Decl. ¶¶ 5–6.) ML relies on Thiele's statement with re-

## 2. Enforceability of the Arbitration Agreements

Thiele signed a series of registration forms containing arbitration-related waivers during his employment. He signed at least three forms before 1990 and at least two forms after 1990. He arbitration clauses in the most recent four forms are identical.

■ As previously held by this Court, under California law, a subsequent written contract alters the terms of a previous contract. *See* Cal.Code Civ.P. § 1698; *see also Crain v. Burroughs Corp.*, 560 F.Supp. 849, 852 (C.D.Cal.1983); *Crossen v. Foremost–McKesson Inc.*, 537 F.Supp. 1076, 1077 (N.D.Cal.1982). Such a partial modification "supersedes those terms to which it relates." *Han v. Mobil Oil Corp.*, 73 F.3d 872, 876 (9th Cir.1995). This Court held that the agreement contained in Thiele's 1995 Form U–4 supersedes the previous agreements. The Court also determined that enforcement of the arbitration clause in this agreement would be contrary to law under the ADEA as amended by the OWBPA. The 1995 arbitration clause did not contain a knowing and voluntary waiver of Thiele's right to a jury trial, as required by the OWBPA, and it is therefore unenforceable with respect to his ADEA claim.

Defendant ML argues on reconsideration that if the 1995 Form U–4 governs this dispute, and if the OWBPA invalidates the arbitration clause, the result is to arbitrate according to the 1972 agreement.[2]

spect to the U–4 Forms signed on at least July 22, 1981, July 11, 1989, October 26, 1994, and July 25, 1995: "The Form U–4['s] ... appear to be reflective of the need to become registered in specific states, locations to which my clients moved over the course of the years. In order to continue servicing my clients, it was required that I register in the particular states. At no time, was any Form U–4 document signed by me for the purpose of registering with the NYSE, the NASD, or the ASE." (Thiele Decl. ¶ 7.)

Thiele's subjective intent however, is immaterial to the interpretation of the agreement. Courts look for expressed intent under an objective standard. *See Blumenfeld v. R.H.*

Defendant ML argues that if a purported modification is unenforceable, the underlying agreement remains unmodified and fully enforceable. ML contends that "if, as the Court found, the OWBPA renders the 1995 agreement unenforceable then a *fortiori* the 1995 agreement could not modify or supplant the 1972 agreement [and the] 1972 agreement would still stand, and it would require Plaintiff to arbitrate his claims." (Def.'s Mem. P. & A. at 12.)

■ The Court disagrees with ML's analysis. ML cites a number of cases, as well as treatises and the Restatement of Contracts, for the contention that an unenforceable contract cannot modify or supplant an existing valid contract. These cases and treatise discussions are inapplicable, as they are distinguishable from the instant case.

Some of the cases cited by ML discuss modifications or substitutions to contracts which are held invalid for lack of consideration, resulting in the prior contract becoming enforceable. *See Motown Record Corp. v. Brockert*, 160 Cal.App.3d 123, 133, 207 Cal.Rptr. 574 (Cal.Ct.App.1984) ("[A]n executory written modification must meet the requirements of a valid contract.... Specifically, the court has held the modification must be supported by new consideration."); *Harvey v. DeGarmo*, 129 Cal. App. 487, 492–93, 18 P.2d 971 (Cal.Ct.App. 1933) ("An executory contract may ... be altered or modified ... [b]ut the variation of a contract ... requires a consideration."); *Main St. A.P.R. Co. v. Los Angeles Traction Co.*, 129 Cal. 301, 305, 61 P. 937 (1900) ("[T]he variation of a contract is as much a matter of contract as the original agreement.... And a contract for such variation ... requires a consideration."). In these cases, the defect at issue was lack of consideration—a contract defect. In the instant case, contract defects are not at

issue. The Court is neither holding all or part of the 1995 Form U–4 void or invalid due to a contract defect such as lack of consideration.

ML also cites cases that address contract modifications or substitutions that are invalid under the Statute of Frauds. *See Executive Towers v. Leonard*, 7 Ariz. App. 331, 333, 439 P.2d 303 (Ariz.Ct.App. 1968) (holding that if parties attempt to modify contract, and the attempt is ineffective under the Arizona Statute of Frauds, then the original contract is not rescinded and remains in effect); Restatement 2d of Contracts § 149 (1979) ("Where the second contract is unenforceable by virtue of the Statute of Frauds and there has been no material change of position in reliance on it, the prior contract is not modified."); Restatement of Contracts § 223(2) (1932) ("If a contract to vary a prior contract or to substitute another contract in its stead is unenforceable because of failure to satisfy the requirements of the Statute [of Frauds], the prior contract is not thereby rescinded."). Again, in these cases, the defect at issue was failure to meet the requirements of the Statute of Frauds—a contract defect. In the instant case, contract defects are not at issue. The Court is neither holding all or part of the 1995 Form U–4 void or invalid due to a contract defect such as failure to meet the requirements of the Statute of Frauds.

Finally, ML relies on a variety of cases that generally assert that when a modification or substitution is void for failure to meet the requirements of a valid contract, then the modification or substitution is unenforceable and the prior contract is revived. *See Airs Int'l v. Perfect Scents Distributions, Ltd.* 902 F.Supp. 1141, 1148 (N.D.Cal.1995) (applying California law and holding that "the substituted contract

---

*Macy & Co.*, 92 Cal.App.3d 38, 46, 154 Cal. Rptr. 652 (1979); *Brant v. California Dairies*, 4 Cal.2d 128, 133, 48 P.2d 13 (1935). "[T]he rules of interpretation of written contracts are for the purpose of ascertaining the meaning of the *words used* therein; evidence cannot be admitted to show intention independent of the

instrument." *See* 1 Witkin, Summary of Cal. Law, § 684, p. 617; *see also Barnhart Aircraft v. Preston*, 212 Cal. 19, 22–24, 297 P. 20 (1931). Thus, the Court cannot consider Thiele's subjective intent when signing the Form U–4 agreements.

may itself be voidable for fraud ... or other reasons; and if [voidable] ... [t]he prior [contract] then becomes enforceable again") 1 Witkin, *Summary of Cal. Law,* §§ 906, 907 (9th ed.1987) (stating that a "[n]ovation is the substitution by agreement of a new obligation for an existing one," and "an essential element of a novation is the validity of the new contract"); Restatement (Second) of Contracts § 279 ("[T]o the extent that the substituted contract is vulnerable on such grounds as mistake, misrepresentation, duress or unconscionability, recourse may be had on the original duty."); 6 Corbin, Corbin On Contracts § 1293 (1962) ("No one will be held to have surrendered or modified any ... contract rights unless ... shown to have assented thereto in a manner that satisfies the requirements of a valid contract.").

All of these references by ML are distinguishable from the instant case. Here, the Court is holding that one provision, the arbitration clause, of the 1995 Form U–4 is unenforceable pursuant to the OWBPA, as to two of Thiele's five claims—the ADEA and FEHA claims. The 1995 Form U–4 is not invalid or unenforceable as a whole, and as to Thiele's public policy, contract, and tort claims, it is wholly enforceable. The Court has not voided the arbitration clause, and therefore the 1972 arbitration clause has no relevance in this case. Rather, the arbitration clause is part of the Form U–4 which as a whole superseded the 1972 and other subsequent agreements. The fact that the OWBPA prevents enforcement of this arbitration clause as to some of Thiele's claims does not revive the arbitration clauses in the earlier agreements.

**B. Thiele's Motion to Lift the Stay of the NYSE Arbitration**

 In addition to opposing Defendant ML's Motion for Reconsideration, Plaintiff Thiele also seeks modification of the Court's Order. In its Order, the Court stayed the arbitration of Thiele's public policy, contract, and tort claims pending the resolution of his ADEA and FEHA claims in this Court. Thiele asks that this Court modify its previous Order by lifting the stay imposed by the Order and allow the arbitration of Thiele's public policy, contract, and tort claims to go forward at this time. Defendant ML opposes the Thiele's Motion to lift the stay. Thiele argues that he suffers prejudice by not being able to arbitrate his claims immediately due to the income loss he is suffering due to his termination from ML. Upon due consideration, and good cause appearing, the Court lifts the stay imposed on the arbitration of Thiele's public policy, contract, and tort claims.

### III. Conclusion

The Court DENIES Defendant's Motion for Reconsideration. The Court GRANTS Plaintiff's Motion to Lift the Stay of the NYSE Arbitration of Thiele's public policy, contract, and tort claims.

IT IS SO ORDERED.