Filed 8/18/16  Tran v. Integra LifeSciences Corp. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SANDRA TRAN, | |
| Plaintiff and Respondent, | G051620 |
| v. | (Super. Ct. No. 30-2014-00709423) |
| INTEGRA LIFESCIENCES CORPORATION, et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Andrew P. Banks, Judge.  Affirmed.  Request for judicial notice granted.

Ogletree, Deakins, Nash, Smoak & Stewart, Vince M. Verde, Jordan R. Ferguson and Rafael G. Nendel-Flores, for Defendants and Appellants.

JML Law, Joseph M. Lovretovich, D. Aaron Brock, Christopher P. Brandes, Andrew S. Pletcher and Jennifer A. Lipski, for Plaintiff and Respondent.

Defendants Integra LifeSciences Corporation (Integra) and its subsidiaries, IsoTis OrthoBiologics, Inc., and IsoTis, Inc., appeal from an order denying their motion to compel arbitration of Sandra Tran's complaint alleging employment discrimination and wrongful termination.[1] Defendants argue the operative arbitration provision was agreed to by Tran when she first applied for employment with them, and that the trial court erred by concluding (1) that provision was superseded by a different arbitration provision Tran signed a few months later, and (2) the latter provision was unenforceable on the grounds of unconscionability. We affirm.

Defendants' assertion that the first arbitration provision could only be superseded by a writing signed by the company president is unpersuasive because the restrictive language they rely on applies solely to a different provision within the same agreement. And we find no error in the trial court's determination that the subsequent arbitration provision is unconscionable. Tran was required to sign that later provision after she was already employed, with no opportunity to negotiate, and it is substantively unconscionable in multiple respects. The trial court did not abuse its discretion by refusing to substantially revise the provision to make it more fair.

Finally, we reject defendants' contention that the unenforceability of the later arbitration provision necessarily revived the earlier provision, which the trial court was obligated to enforce. The contention ignores (1) the existence of an intervening integrated agreement between Tran and her employer which had no arbitration provision, and (2) the fact the original agreement fails to specifically identify—let alone explicitly bind—*any party* other than Tran.

---

[1] Defendants have requested us to take judicial notice of documents reflecting that as of July 2015, Integra "completed a spin-off of its orthobiologics and spinal fusion hardware business" and the new entity, SeaSpine Holdings Corporation, now "serves as the ultimate parent company of the IsoTis Companies." Defendants explain this is relevant to establish that SeaSpine is "an interested non-party in this matter." The request is granted.

## FACTS

Tran sued Integra in March 2014, and while the complaint is not included in our record, both sides describe it as alleging various causes of action arising out of employment discrimination in violation of Government Code section 12940, including gender and disability discrimination, failure to accommodate, harassment, and wrongful termination.

In July 2014, defendants filed their motion to compel arbitration of the complaint, in accordance with the arbitration provision contained in an "Applicants Statement [and] Agreement" (Applicants Agreement) they contended Tran had signed when applying for a job with IsoTis OrthoBiologics, Inc. in 2006. (Boldface omitted.)

The Applicants Agreement is a densely packed, single page document which begins with the sentence "In the event of my employment to a position in the Company, I will comply with all rules and regulations of the Company." It then sets forth various requirements and policies of "the Company,"—which are never identified—including that "the Company promotes a voluntary system of alternative dispute resolution, which involves binding arbitration to resolve all disputes which may arise out of the employment context." The Applicants Agreement then recites that "I voluntarily agree that any claim, dispute, and/or controversy . . . which would otherwise require [or] allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my [seeking] employment with, employment by, or other association with the Company, whether based on tort, contract, statutory or equitable law, or otherwise . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. Sec 1280 et seq.,

including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery)." The Applicants Agreement is not signed by any party other than Tran.

Tran opposed the motion to compel arbitration, and in support of her opposition, she declared she had signed no agreements with defendants *in 2006*— although she did not deny signing the Applicants Agreement at some point. Instead, she stated that she "recall[ed] submitting my resume and/or a job application to Defendants in May or June of 2008"—without specifying what form that job application may have taken—and that she received an offer letter from IsoTis OrthoBiologics, Inc. in July 2008. That letter, which contained no arbitration provision, stated it "sets forth the entire agreement between you and IsoTis. Once signed by you, it will become legally binding and will supersede all prior discussions, promises, and negotiations." Tran signed that letter, acknowledging her agreement with its terms.

Tran declared that after she commenced employment, as part of the orientation process, she was given a "stack of new-hire employment paperwork," and lacking the time to fully review them all, and given no opportunity to take them home, she signed the documents where indicated. Although Tran did not remember any arbitration provisions contained within that stack of paperwork, she acknowledged the stack could have included a copy of the Applicants Agreement.

Tran also stated that in October 2008, "[s]everal months into [her] employment," she was asked to sign a document entitled "Confidentiality and Invention Disclosure Agreement" (Invention Agreement), which was described to her as an "industry standard agreement" providing that Integra would own any invention or discovery made by her during her employment. She stated she was not allowed sufficient time to review the Invention Agreement before signing it, was not given the opportunity to take it home, and was provided with a copy only after she signed it.

The Invention Agreement states it is entered into "In consideration of [Tran's] desire to obtain employment with Integra LifeSciences Corporation, any of its

4

subsidiaries, or any of their respective successors or assigns"—the group of which is then collectively identified as "'Company'"—and "Company's desire to secure [Tran's] services." It includes only two substantive provisions: section 1 prohibits Tran from disclosing or using the company's proprietary information, and section 2 gives the company ownership of any inventions or intellectual property she might develop during the period of her employment. Section 3 of the Invention Agreement is an arbitration provision which provides, in pertinent part that "[e]xcept as set forth in the last two sentences of this paragraph, I agree that any dispute or controversy arising out of my employment or this agreement, or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by an expedited arbitration to be held in Middlesex County, New Jersey, in accordance with the National Rules of the American Arbitration Association (then in effect) governing employment disputes, subject to the provisions of this Paragraph 3. The arbitration proceeding and all filing, testimony, documents and information relating to or presented during the arbitration proceeding shall be disclosed exclusively for the purpose of facilitating the arbitration process and for no other purpose and shall be deemed to be information subject to the confidentiality provisions of this Agreement. The arbitrator may grant injunctions or other relief in such dispute or controversy. . . . I agree that it would be impossible or inadequate to fully measure or calculate the Company's damages from any breach of the covenants set forth in Sections 1 and 2 of this Agreement. Accordingly, I agree that if I breach any of these covenants, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement." (Italics added.)

The Invention Agreement also contains several "General Provisions," specifying, among other things that it is governed by New Jersey law and the parties consent to personal jurisdiction in any court in the state of New Jersey. It also specifies

5

that Tran's "obligations under this Agreement shall survive the termination of [her] employment . . . and shall be binding upon [her] heirs, executors, administrators and legal representatives." It contains no reciprocal provision applicable to the company. To the contrary, it contains an additional provision reiterating that while "[t]his Agreement will be binding upon my heirs, executors, administrators and other legal representatives," it "w*ill be for the benefit of the Company, its successors, and its assigns.*" (Italics added.)

Finally, the Invention Agreement reserves to the company "the right, in its sole discretion, to waive any term or provision of this agreement in such circumstances as the Company deems appropriate."

Tran's opposition to the motion to compel was grounded on two contentions: first, that the operative arbitration provision was the one in the Invention Agreement, rather than the one in the Applicants Agreement; and second, that the provision in the Invention Agreement was unconscionable. The latter contention relied on several aspects of the provision, including that it was unilateral—effectively binding only Tran—that it incorporated an overly-broad confidentiality provision that would hamper Tran's ability to prove any claims, and that it required Tran to arbitrate any claims in New Jersey, in accordance with New Jersey law, and to submit to the jurisdiction of the New Jersey courts. Tran also argued the arbitration provision in the Applicants Agreement, even if operative, was unenforceable, since the only other party to that agreement is an unidentified "Company," the provision's language binds only Tran and not the company, and no representative of that company had signed the agreement.

In reply, defendants responded to Tran's contention she had not signed the Applicants Agreement, or any other agreement with defendants, in 2006, by explaining that the Applicants Agreement had been a standard part of IsoTis OrthoBiologic's, Inc. employment application process when Tran applied for employment in 2008. The executed Applicants Agreement, along with a completed employment application form, were included in Tran's personnel file. And although both documents bore a typewritten

6

date of 2006, defendants surmised that both had actually been submitted by Tran when she applied for employment in 2008, but had been erroneously dated with the year 2006. Defendants also argued the surrounding circumstances make clear the identity of the "Company" in the Applicants Agreement, that the arbitration provision in the Applicants Agreement was not superseded by the provision in the Invention Agreement, that the arbitration provision in the Invention Agreement is not unconscionable, and that if the trial court found the Invention Agreement provision to be unenforceable, that finding would necessarily revive the earlier arbitration provision in the Applicants Agreement.

The trial court denied the motion to compel, explaining the later arbitration provision in the Invention Agreement was the controlling one, and finding that provision to be both procedurally and substantively unconscionable. With respect to the latter point, the court stated there were several substantively unconscionable aspects to the provision, including the requirement that Tran, who both resided and worked in Southern California, must nonetheless arbitrate her claims in New Jersey and submit to the jurisdiction of the New Jersey courts. The court also rejected defendants' request that it sever the unconscionable parts of the provision and enforce the provision without them. The court noted there were too many troublesome aspects of the provision and that excising all of them would require the court to "reform the agreement and provisions for arbitration."

## DISCUSSION

### 1. Controlling Law and Applicable Standards of Review

Although defendants argue that the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1-16) rather than California law, governs this motion, the point is immaterial. Code of Civil Procedure section 1281.2 governs motions to compel arbitration brought in California courts, without regard to whether California law or the FAA otherwise applies to the proposed arbitration. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 410 ["Because the California procedure for deciding motions to compel

7

serves to further, rather than defeat, full and uniform effectuation of the federal law's objectives, the California law, rather than section 4 of the [FAA], is to be followed in California courts"].) Moreover, because the defense of unconscionability is generally applicable to contracts under California law, it remains an available defense to a petition to compel arbitration, even under the FAA. (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77; see *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142 ["We begin by noting that . . . unconscionability remains a valid defense to a petition to compel arbitration"].)

The standards we apply in this appeal are well-settled. As a general matter, "[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Moreover, "[t]he doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors Inc.* 150 Cal.App.4th 42, 58.) Thus the burden is on defendants to affirmatively show error, even on issues where Tran had the burden of proof below. (*Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474.)

"On appeal from the denial of a motion to compel arbitration, '[u]nconscionability findings are reviewed de novo if they are based on declarations that raise "no meaningful factual disputes." [Citation.] However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." [Citation.] The ruling on severance is reviewed for abuse of discretion.'" (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1144.)

8

And to the extent defendants' contentions turn on contractual interpretation, those contentions are subject to de novo review. (*Morgan v. City of Los Angeles Bd. of Pension Comrs*. (2000) 85 Cal.App.4th 836, 843 [The "interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence"].)

## 2. *Operative Arbitration Provision*

Defendants claim the court erred in concluding that the arbitration provision in the Invention Agreement, rather than the one contained in the Applicants Agreement, is the operative provision. Their argument is twofold. First they contend the Applicants Agreement could not have been superseded by the Invention Agreement because the Applicants Agreement specifies it cannot be contradicted except by a writing signed by the company's president—and the Invention Agreement was not such a writing. And second, defendants claim the arbitration provision in the Invention Agreement was not intended to supersede the earlier provision, but instead applies only to alleged breaches of the confidentiality and invention ownership provisions contained in that agreement. Both of these claims raise issues of contractual interpretation, subject to de novo review. Neither claim is persuasive.

Although defendants are correct that the Applicants Agreement includes language specifying that no agreements "contrary to the express language of the agreement are valid unless they are in writing and signed by the President of the Company," they ignore the placement of that language within the document. The language defendants rely upon is not found in a general provision which would presumably govern the entire document. Instead, it is contained within a single paragraph at the end of the document, which is phrased as a distinct "agreement . . . *regarding the rights of the Company or employee to terminate employment with or without good cause*." (Italics added.)

9

That paragraph is effectively a stand-alone agreement governing one issue: the at-will nature of the anticipated employment relationship—complete with its own integration clause. In its entirety, the paragraph states: "*If hired, I agree as follows*: My employment and compensation *is terminable at-will, is for no definite period, and my employment and compensation may be terminated by the Company (employer) at any time for any reason whatsoever, with or without good cause* at the option of either the Company or myself. No implied, oral, or written agreements contrary to the express language of the agreement are valid unless they are in writing and signed by the President of the Company (or majority owner or owners if Company is not a corporation). No supervisor or representative of the Company, other than the President of the Company (or majority owner or owners if Company is not a corporation), has any authority to make any agreements contrary to the foregoing. *This agreement is the entire agreement* between the Company and the employee *regarding the rights of the Company and the employee to terminate employment with or without good cause*, and this agreement takes the place of all-prior and contemporaneous agreements, representations, and understanding of the employee and the Company." (Italics added.)

The paragraph specifies, both at its beginning and its end, that its subject matter is the at-will nature of the contemplated employment relationship. It never references anything outside its confines, and its language makes clear its sole purpose is to establish the at-will status of any employment relationship that might be created between Tran and the company, and to preclude any claim by Tran that the relationship either had been, or later became, anything other than at will.

Defendants rely on *Rebolledo v. Tilly's, Inc*. (2014) 228 Cal.App.4th 900, as an example of a similar contractual provision which was found by this court to preclude amendment of the agreement's arbitration agreement absent the required signatures. However, that provision is distinguishable because its requirement of specific signatures for modification was not limited to the at-will status of the employment

10

relationship. It stated: "'Employee's [a]t-[w]ill status is the entire agreement between Employee and [Employer]. It supersedes all prior agreements, understandings and representations concerning Employee's employment with [Employer]. Only the President, Senior Vice President and Director of Human Resources, acting together, may enter into a different employment agreement *or modify* [*Employer's*] *employment policies*.'" (*Id.* at p. 923, italics partially omitted.) This court relied explicitly on that italicized language in rejecting the employer's claim that the modification restriction applied *only* to the employee's at-will status. We noted "[t]he agreement plainly requires signatures to change the employee's status *or* 'modify . . . employment policies.' . . . If Employer intended to require signatures only to change an employee's status, there would be no need to include the phrase 'or modify . . . employment policies.' The signature requirement is broadly written to encompass much more than a status change." (*Ibid.*)

In this case, by contrast, the language in the Applicants Agreement restricting the creation of any agreement contradicting "the express language of the agreement" does not refer to anything other than the specific agreement that Tran would be an at-will employee. And because that language is found only within this distinct "agreement . . . regarding the rights of the Company . . . to terminate employment with or without good cause," we conclude it imposed no restriction on alteration of the arbitration provision also included in the Applicants Agreement.

Defendants' second claim relies on the language of the Invention Agreement. They argue its integration clause reflects it was not intended to supersede the Applicants Agreement, and its arbitration provision is narrowly drawn to apply only to claims alleging breaches of its substantive provisions. Specifically, defendants assert that while the Invention Agreement's integration clause states it "'sets forth the entire agreement and understanding between the Company and [Tran] relating to the subject matter herein,'" that clause is not intended to actually supersede prior agreements

11

because it states only that it merges prior *discussions* and "does not provide that any prior agreements are superseded." The contention borders on the frivolous. There is no requirement that the words "supersede" and "agreements" be actually used for an integration clause to have that effect. As cogently pointed out in *Grey v. American Management Services* (2012) 204 Cal.App.4th 803, 807, "[b]ecause the contract says it is the entire agreement, common sense dictates that it supersedes other prior agreements." We agree.

And defendants' claim that the arbitration provision in the Invention Agreement was intended to apply only to alleged breaches of the confidentiality and invention ownership provisions of that document, and not to other claims, fares no better. The trial court explicitly rejected this assertion on the basis that defendants were "judicially estopped from making that argument because [they] took the position in [another case] that it was an all-inclusive arbitration agreement." Defendants do not acknowledge that finding in their opening brief, let alone explain why it might have been erroneous. They have consequently waived any challenge to it.[2] "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) In any event, defendants' claim is contrary to the clear language of the provision itself, which states it applies to "any dispute or controversy arising out of [Tran's] employment or this agreement." We consequently reject this claim as well.

---

[2] Defendants do address this issue in their reply brief. However, "[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument." (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

*3. Unconscionability of Arbitration Provision in Invention Agreement*

Defendants next argue the trial court erred in concluding the arbitration provision in the Invention Agreement was unconscionable and refusing to enforce it. Again, we cannot agree.

"[T]he core concern of the unconscionability doctrine is the ''''absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.''''" (*Sonic-Calabasas A, Inc. v. Moreno, supra*, 57 Cal.4th at p. 1145.) In other words, unconscionability "'has both a "procedural" and a "substantive" element.' . . . [and] 'both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable. Both, however, need not be present to the same degree. A sliding scale is applied so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.''''" (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821.)

The first element, procedural unconscionability, "generally takes the form of a contract of adhesion, '"which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."'" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) The evidence before the trial court easily supported such a finding in this case. Tran's declaration stated that she was given the Invention Agreement in final form, and was asked to sign it as is, without even having sufficient time to review it. Defendants do not dispute those contentions, nor do they suggest Tran would have been permitted to negotiate the terms of the arbitration provision had she asked to do so.

What defendants argue instead is that the court erroneously characterized the Invention Agreement as a "'pre-employment'" agreement, when in fact Tran admitted she had signed it several months *after* her employment commenced. However, it is not

13

clear why defendants believe that distinction helps them.  It certainly does nothing to dispel the adhesive nature of the interaction.  To the contrary, "[i]t is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." (*Serpa v. California Surety Investigations, Inc*. (2013) 215 Cal.App.4th 695, 704.)  We find no error in the trial court's finding of procedural unconscionability.

The second element, substantive unconsionability, "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.  [Citations.]  A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*), *LLC* (2012) 55 Cal.4th 223, 246.)

Tran argued the arbitration provision in the Invention Agreement was substantively unconscionable on several grounds, including (1) it required arbitration in New Jersey, despite the fact Tran both resided and was employed in California, and (2) it was effectively unilateral, requiring Tran to arbitrate her claims, but not requiring defendants to arbitrate theirs.  The trial court agreed, and so do we.

Defendants contend the inclusion of what is effectively a forum selection clause for the required arbitration could not be considered unconscionable because such clauses are routinely inserted in agreements, are considered prima facie valid, and are not unreasonable.  That is not entirely accurate.  Instead, as explained by our Supreme Court, the propriety of a forum selection clause is evaluated by applying essentially the same analysis employed to determine unconscionability; i.e. was the agreement freely negotiated and was the result of that negotiation fair:  "No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing *in a contract entered into freely and voluntarily by parties who have*

14

*negotiated at arm's length.* For the foregoing reasons, we conclude that forum selection clauses are valid and may be given effect, in the court's discretion and *in the absence of a showing the enforcement of such a clause would be unreasonable.*" (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495-496, italics added; see *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11-12 ["California favors contractual forum selection clauses so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable"].)

Here, as we have already noted, the arbitration provision in the Invention Agreement was not freely negotiated at arm's length. Instead, it was unilaterally imposed on Tran by her employer. And while the state of New Jersey—the home state of Integra—might not have been a wholly arbitrary choice of forum, that does not make it an automatically reasonable location for the adjudication of Tran's employment claims. This is especially true because Tran's actual employer when she signed the agreement was Integra's subsidiary, IsoTis OrthoBiologics, Inc., not Integra itself, and IsoTis OrthoBiologics, Inc. was apparently headquartered in Irvine, California.[3] Moreover, Tran's workplace was in California, and thus presumably the great majority of witnesses and other evidence relevant to her claims of workplace discrimination and harassment, were also in California.

In challenging the trial court's ruling, defendants make no effort to explain why New Jersey would be a reasonable location to arbitrate Tran's employment claims. Instead, they argue that Tran failed to offer the court admissible evidence demonstrating that arbitrating in New Jersey would be a hardship for her. We disagree. The trial court was free to infer that conclusion from the undisputed facts that Tran lived and worked in California, the alleged events giving rise to her complaint occurred in California, and

---

[3] According to the offer letter Tran signed IsoTis OrthoBiologics, Inc., was "based in Irvine, California."

15

most, if not all, of the witnesses and evidence she would need to prove her case were in California.

The second unconscionable aspect of the Invention Agreement's arbitration provision is that it is effectively unilateral. As explained in *Armendariz v. Foundation Health Psychcare, Inc.* (2000) 24 Cal.4th 83 at page 117, "it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee." Moreover, "[i]f the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." (*Id.* at p. 118.)

In this case, the unilateral effect of the arbitration provision is manifested in several ways. First, the provision is phrased in the first person singular: It repeatedly states "I agree" rather than "Tran and the Company agree" to its requirements. As Tran points out, such language is a hallmark of unilateral arbitration provisions. (See *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1253-1254 [noting that a clause stating that "'all disputes'" are subject to arbitration is not bilateral if "only one side (petitioners) agreed to that clause"].)

Further, while the arbitration provision in the Invention Agreement requires Tran to arbitrate *any* claims arising out of her employment or the Invention Agreement, it expressly allows defendants to file suit in court if they allege Tran violated either the confidentiality provision or the invention ownership provisions of the agreement. While that carve-out does not technically exempt defendants entirely from the requirement to arbitrate their claims against Tran, it is difficult to conceive of what other claims they might ever have alleged against her. In *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, the court rejected a similar provision as unduly one-sided, noting that

16

an arbitration agreement which "specifically excludes 'claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. . . .' . . . exempts from arbitration the claims [employer] is most likely to bring against its employees." (*Id.* at p. 176.) The same is true here.

Of course, as noted in *Armendariz,* if an employer has "reasonable justification for the arrangement—i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum—such an agreement would not be unconscionable." (*Armendariz*, *supra*, 24 Cal.4th at p. 120.) In this case, it appears defendants attempted to justify their exemption from arbitration by having Tran agree that "it would be impossible or inadequate to fully measure and calculate the Company's damages from [her] breach of the [confidentiality and invention ownership provisions] of this Agreement," and thus in the event of her breach of either of those obligations, the company would be allowed "in addition to any other right or remedy available" to pursue claims for injunction or specific performance in court. That justification fails, however, because the arbitration provision itself specifically empowers the arbitrator to "grant injunctions or other relief" in any controversy.

In any event, the troubling unilateral character of this arbitration provision is also exacerbated by other provisions in the Invention Agreement. As we have already noted, it also specifies that Tran's "obligations under this Agreement shall survive the termination of [her] employment . . . and shall be binding on [her] heirs, executors, administrators and legal representatives," but it contains no reciprocal provision applicable to the company. To the contrary, in a separate provision, it reiterates that while "[t]his Agreement will be binding upon my heirs, executors, administrators and other legal representatives," it "w*ill be for the benefit of the Company, its successors, and its assigns.*" (Italics added.)

Most significantly, however, the Invention Agreement specifically reserves to the company "the right, in its sole discretion, *to waive any term or provision of this agreement in such circumstances as the Company deems appropriate*." (Italics added.) Such an unfettered unilateral right would essentially defeat the supposed bilateral nature of the arbitration provision contained therein, even in the absence of the other language already accomplishing that result. (See *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15 ["[W]hen a party to a contract retains the unfettered right to terminate or modify the agreement, the contract is deemed to be illusory"].)

The Invention Agreement's requirement that Tran arbitrate her claims in New Jersey, and submit to the jurisdiction of the New Jersey courts, combined with the various provisions reflecting the unilateral nature of that arbitration requirement, demonstrates a high degree of substantive unconsionability. Consequently, even assuming a relatively low degree of procedural unconscionability, we find no error in the trial court's determination that the arbitration requirement was unconscionable.

Nor do we believe the trial court abused its discretion by refusing to sever the unconscionable provisions. As explained in *Armendariz*, where an arbitration agreement has more than one unconscionable provision, "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) In that situation, the Supreme Court held "the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose" and refusing to enforce that agreement. (*Ibid*.) We conclude the same is true here.

Besides, as the trial court pointed out, it could not simply sever a provision to make this agreement operate reasonably and bilaterally. Because there are numerous troublesome aspects to the agreement, it would require substantial revision to make it fair. The court was not required to undertake that task. Further, even if the court could

18

have revised the agreement to make it operate bilaterally, the effort would be a meaningless one, since the parties' employment relationship had already ended and defendants are not asserting any claims against Tran. Thus, even if the trial court were able to strike the language that effectively exempts defendants from arbitrating their claims, it would not actually change anything. The court was not required to engage in such a fiction.

Finally, the fact defendants were willing to waive the requirement that Tran arbitrate in New Jersey changes nothing. The same offer was made by the defendants in *Armendariz*, and rejected by the Supreme Court: "[W]hether an employer is willing, now that the employment relationship has ended, to allow the arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.'" (*Armendariz, supra*, 24 Cal.4th at p. 125.)

*4. Revival of Arbitration Provision in the Applicants' Agreement*

Defendants' last argument is that even if the trial court correctly concluded that the arbitration provision in the Applicants Agreement had been superseded by the provision in the Invention Agreement, the trial court's refusal to enforce the latter provision necessarily "revive[d] the arbitration provision within the Applicants Agreement." In support of that argument, defendants cite *Airs Int'l v. Perfect Scents Distributions, Ltd.* (N.D.Cal. 1995) 902 F.Supp. 1141, 1148, for the proposition that "if a subsequent agreement is voidable, the prior contract becomes enforceable again."

But whatever the validity of that legal proposition, it does not help defendants here. In making that assertion, defendants have failed to account for the employment offer letter that Tran signed after the Applicants Agreement and before the

19

Invention Agreement. That letter also contains an integration clause, which specifies it "*sets forth the entire agreement* between you and IsoTis. Once signed by you, it will become legally binding and will supersede all prior discussions, promises, and negotiations." (Italics added.) Thus, it is that offer letter, not the Invention Agreement, which actually superseded and extinguished the Applicants Agreement Tran signed when she applied for employment with IsoTis OrthoBiologics, Inc.[4] And consequently, the court's finding that the arbitration provision contained in the Invention Agreement was not enforceable could only have revived an arbitration provision contained in the offer letter. But there was none.

In any event, defendants have never established that the Applicants Agreement, even if it were revived, would actually entitle them to arbitrate Tran's claims against them. As we have already noted, the Applicants Agreement specifically identifies only one party, Tran, and she is the only signatory. It otherwise merely refers to the other party as the company, without ever identifying what specific company it is referring to. On appeal, defendants do not acknowledge this problem, preferring instead to imply they are all one undifferentiated entity or purposes of that agreement. Thus their opening brief

---

[4] The only part of the Applicants Agreement that would not have been automatically superseded by the offer letter is what we have already identified as the stand alone paragraph specifying that if Tran is hired, her employment would be at will. As we explained, it is that stand-alone provision which included the sentence specifying it could only be contradicted by an agreement signed by the company president. However, the point is moot because nothing in the offer letter contradicted that provision. Instead, the offer letter contains a similar provision, stating that "IsoTis OrthoBiologics, Inc. is an at-will employer, and cannot guarantee employment for any specific duration. You are free to resign, and IsoTis is entitled to terminate your employment at any time, with or without cause." And just like the similar provision in the Applicants Agreement, the provision in the offer letter specifies the at-will nature of the employment relationship—but no other provision in the agreement—can only be altered by agreement of the highest company executive: "This provision can only be changed or revoked by the CEO, and cannot be changed by any express or implied agreement based on statements or action by any employee or supervisor."

20

simply asserts that the Applicants Agreement was entered into between all three of them, collectively, and Tran. And thereafter, they make references to Tran "interview[ing] with Appellants" and "working for Appellants"

However, defendants otherwise inform us they are not all the same company. Rather, they explain that IsoTis OrthoBiologics, Inc. and IsoTis, Inc. are subsidiaries of Integra. Thus, the language of the Applicants Agreement suggests it would apply to only one of them, while not specifying which one. This omission is in marked contrast to the Invention Agreement, which clearly states that the "Company" referenced therein encompasses Integra, any of its subsidiaries, or any of their successors and assigns. When this issue was raised by Tran at the trial court level, defendants simply dismissed it, claiming "[Tran's] argument that the agreement's term, 'Company,' is vague is without merit given the context in which [Tran] was supplied the agreement." They do not explain what context that was, other than to note it was "IsoTis OrthoBiologics [which] provided [Tran] with the Applicant's Agreement concurrently with her application for employment."

The only inference we could draw from that terse response is that IsoTis OrthoBiologics, Inc.—the specific company Tran applied to work for—is the only likely candidate to fill the role of "Company" in the Applicants Agreement. By contrast, the other two defendants, Integra and IsoTis, Inc., have no claim to that status. Thus, at best, the Applicants Agreement might have provided a basis for one of these three defendants to demand that Tran arbitrate her claims against. It was not, however a sufficient basis to grant their combined motion to compel Tran to arbitrate against all of them.

## DISPOSITION

The order is affirmed.  Defendants request for judicial notice is granted. Tran is to recover her costs on appeal.


                                                        THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.